UNITED STATES v. MILLER et al.

(District Court, D. Indiana. April 23, 1901.)

No. 6,185.

1. CONSTITUTIONAL LAW—STATUTES—ELECTIONS—PREVENTION OF EXERCISE OF SUFFRAGE.

Rev. St. § 5507, providing that every person preventing another from exercising the right of suffrage, "to whom that right is guaranteed by the fifteenth amendment to the constitution," shall be punished, etc.. is based solely on Const. Amend. 15, declaring that the right of United States citizens to vote shall not be denied, etc., on account of race, color, or previous condition of servitude; and Const. art. 1, § 4, providing that states may prescribe the times, places, and manner of holding elections for senators and representatives, but that congress may at any time, by law, make or alter such regulations, cannot be invoked to support the validity of such statute.

2. SAME—POWER OF CONGRESS—PREVENTION ON ANY ACCOUNT—RACE—COLOR.

Const. Amend. 15, declares that the right of United States citizens to vote shall not be denied or abridged by the United States or by any state on account of race, color, or previous condition of servitude, and that congress shall have power to enforce this article by appropriate legislation. Rev. St. § 5507, based on such amendment alone, provides that every person who prevents, hinders, controls, or intimidates another from exercising or in exercising the right of suffrage guarantied by the fifteenth amendment to the United States constitution, by means of bribing, etc., shall be punished. *Held*, that such statute was unauthorized by such amendment, since the latter does not grant congress the power to make criminal the deprivation of a citizen's right to vote, except in the instance of a discrimination on account of race, color, or previous condition of servitude, and the statute makes it an offense to deprive a man of his right to vote on any account whatever; hence an indictment in the words of the statute is demurrable.

Albert W. Wishard, U. S. Atty., and Jesse J. M. La Follette, Asst. U. S. Atty.

J. E. McCullough and Burke & Warrum, for defendants.

BAKER, District Judge. The question here involved relates to the sufficiency of the indictment against the above-named defendants to withstand a demurrer thereto. Omitting the formal averments, the indictment charges that the defendants did on the 6th day of November, 1900, unlawfully and feloniously control, hinder, and prevent William Jackson, Herbert Wilkinson, James Richardson, John J. Crittenden, Mitchell Ritter, Stuart Gwinn, and divers other persons unknown to the grand jury, each and all of whom

107 F.—58

were then persons of African descent, negroes, male citizens of the United States, over the age of 21 years, residents of the state of Indiana for more than 6 months, of Marion county more than 60 days, of their respective precincts more than 30 days, and each of whom was then and there a legal and qualified voter, from exercising their right to vote and from voting at a general election for selecting and electing state, county, and township officers, and a representative from the Seventh congressional district of Indiana to the congress of the United States, which was held on said day, by then and there controlling and preventing said persons from voting at said election by bribing them, the said voters, with free beer, lunches, and by paying each of them money, current funds of the United States, they, the said William Miller, Emanuel Collins, Hagerman Muntz, John Gentry, Budd Taylor, and Charles Alexander then and there well knowing said persons to be legal voters, and each and all of. said acts were then and there done to hinder and prevent them from voting at said election, contrary to the form of the statute, etc. This indictment is based solely on section 5507, Rev. St., being section 5 of an act entitled "An act to enforce the rights of citizens of the United States to vote in the several states of this Union, and for other purposes," approved May 31, 1870. 16 Stat. 140 et seq. This section reads as follows:

"Every person who prevents, hinders, controls or intimidates another from exercising or in exercising the right of suffrage to whom that right is guaranteed by the fifteenth amendment to the constitution of the United States, by means of bribery, or threats of depriving such person of employment or occupation, or of ejecting such person from a rented house, lands or other property, or by threats of refusing to renew leases or contracts for labor, or by threats of violence to himself or family, shall be punished as provided in the preceding section."

This section, if valid, is broad enough to support the indictment, which closely follows the language of the statute. While there is another provision of the constitution which would authorize the congress to protect all citizens of the United States, without distinction, in the right to vote at elections held for the election of members of congress, yet it is evident that the section in question is grounded solely on the fifteenth amendment to the constitution. This article of amendment reads:

"Section 1. The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any state on account of race, color or previous condition of servitude.

"Sec. 2. The congress shall have power to enforce this article by appropriate legislation."

It is manifest that no power is conferred on congress by the second section to enact legislation for the regulation and control of elections generally, nor for securing to the citizens of the United States the right to vote at all elections. The right of suffrage is not inherent in citizenship, nor is it a natural and inalienable right, like the right to life, liberty, and the pursuit of happiness. Unless restrained by constitutional limitation, the legislature may lawfully confer the right of suffrage upon such portion of the citizens of the United States as it may deem expedient, and may deny that right

to all others. Before the adoption of the fifteenth amendment, it was within the power of the state to exclude citizens of the United States from voting on account of race, age, property, education, or on any other ground however arbitrary or whimsical. The constitution of the United States, before the adoption of the fifteenth amendment, in no wise interfered with this absolute power of the state to control the right of suffrage in accordance with its own views of expediency or propriety. It simply secured the right to vote for members of congress to a definite class of voters of the state, consisting of those who were eligible to vote for members of the most numerous branch of the state legislature. Further than this, no power was given by the constitution, before the adoption of the fifteenth amendment, to secure the right of suffrage to any one. The fifteenth amendment does not in direct terms confer the right of suffrage upon any one. It secures to the colored man the same right to vote as that possessed by the white man, by prohibiting any discrimination against him on account of race, color, or previous condition of servitude. Subject to that limitation, the states still possess uncontrollable authority to regulate the right of suffrage according to their own views of expediency. The amendment declares that the right of citizens of the United States to vote shall not be denied or abridged by the United States or by any state. While the amendment is primarily aimed at hostile legislation denying or abridging the right of colored men to vote, I am of the opinion that congress possesses the power to secure the colored man against the deprivation of his right to vote by individuals, where such deprivation occurs on account of race, color, or previous condition of servitude. I think Mr. Justice Bradley right when he said in U. S. v. Cruikshank, 25 Fed. Cas. 707:

"I am inclined to the opinion that congress has the power to secure that right not only against the unfriendly operation of state laws, but against outrage, violence, and combinations on the part of individuals, irrespective of state laws."

But section 5507 is not limited to the deprivation of the right of the colored man to vote on account of race, color, or previous condition of servitude. It makes it an offense to deprive any colored man of his right to vote, even when such deprivation does not occur on account of race, color, or previous condition of servitude. If the section is valid, the ground of the deprivation becomes wholly immaterial. But it seems to me to be clear that congress is not granted power to make such deprivation criminal except in the single instance of a discrimination on account of race, color, or previous condition of servitude. If the right of the colored man to vote is interfered with on any other ground, the state alone can punish the violator of that right. The congress can go no further than to protect him against discrimination where such discrimination occurs on account of race, color, or previous condition of servitude. The power of congress to enact this section is bottomed solely upon this amendment. The effect of article 1, § 4, of the constitution in respect to the election of senators and representatives is not here involved. Nor can it be invoked to support the validity

of the section in question. As we have said, this section is bottomed solely on the fifteenth amendment. It cannot be successfully contended that the amendment confers authority to impose penalties for every conceivable wrongful deprivation of the colored man's right to vote. It is only when the wrongful deprivation is on account of race, color, or previous condition of servitude that congress may interfere and provide for its punishment. If, therefore, the section in question goes beyond that limit, it is unauthorized by the amendment. That the section does go beyond that limit is plainly evident, because it makes every deprivation of the colored man's right to vote penal, whether such deprivation is or is not on account of race, color, or previous condition of servitude. There are no words of limitation in this section of the statute. The court is not authorized to read the words of limitation found in the fifteenth amendment into the section; and, if the court could do so, still the indictment would be bad, because it fails to allege that the colored men who are alleged to have been deprived of their right to vote were so deprived on account of race, color, or previous condition of servitude. The demurrer to the indictment must be sustained.