Owen McGivern, J.
This is an action to recover accidental death benefit provisions under a life insurance policy issued by the defendant insurance company on the life of the plaintiff’s husband, Abraham Stawski, deceased. The policy itself provided for a death benefit of $10,000, which has been paid, and a supplement to the policy provided for an additional benefit in the same sum “ for Death Caused by Certain Bodily Injuries ”, “ upon due proof that (1) the Insured’s death was caused * * * by a bodily injury sustained solely by external, violent, and accidental means ” and it further contained certain exceptions to the effect that: “No such Additional Benefit will be payable * * * if death results, directly or indirectly, or wholly or partially * * * (5) from injuries intentionally inflicted on the Insured by any person * * * or (9) from a state of war, riot or insurrection ’ ’.
Concededly, plaintiff was the beneficiary of the policy. The proof adequately shows death was the result of accidental means. But the defendant has offered evidence tending to bring the insured’s death within the exceptions quoted above.
Such defense evidence consists largely of two depositions showing that the deceased was injured during an attack by artillery and machine-gun fire on the S. S. Altalena on June 22, 1948 in the harbor of Tel Aviv. Concededly, he died the following day of such wounds. There is no doubt that the Altalena had transported munitions on its voyage from Prance to Israel and that the decedent was on the vessel throughout such voyage, except for a brief trip ashore at Kvar Vitken, Israel, on June 21, 1948, and that on the following day he was in the ship’s messroom at the time of the attack which resulted in his death. The master of the Altalena testified that, so far as he knew, decedent was the manager of the vessel on behalf of its owner but that he performed no duties during the voyage. The master further testified that at Kvar Vitken some 30 men came on board the Altalena and that these men were members of the Irgun, a military organization in Israel at odds with the Grovern *426 ment and carrying on terrorist activities. After the Altalena left Kvar Vitken, and during its trip from thence to Tel Aviv, it was under the surveillance of Israeli war vessels which twice fired warning shots across the bow of the Altalena.
Dramatic testimony as to the final attack on the Altalena was given by an eyewitness, who at the time of the attack in question was a correspondent for the New York Herald, Tribune; he testified that the attack was made by the Haganah, then the official army of Israel.
The defendant offered in evidence a certified copy of President Truman’s Beport to Congress concerning United Nations activities during 1948, and prepared as required by section 287b of title 22 of the United States Code. Plaintiff objected to the admissibility of the report. Section 367 of the Civil Practice Act, dealing with official reports, is inapplicable since it is limited to documents required to be filed “in a public office of the state ”. Whether the report is admissible under a common-law rule concerning public documents need not be decided, for the report’s only relevance to the instant case is its narration of historical events, of which the courts take judicial notice. Any document “ worthy of confidence ” may be used by the courts to ascertain historical facts without the production of evidence (Swinnerton v. Columbian Ins. Co., 37 N. Y. 174, 188 [1867]). This report concerned itself with foreign affairs and it seems to have had the confidence of the President of the United States. Accordingly, the proffered document will be considered by this court as an aid in determining relevant historical facts of which this court takes judicial notice.
It appears therefrom that the State of Israel proclaimed its independence and was recognized de facto by the United States on May 14, 1948, some six weeks before the attack on the S. S. Altalena. War was immediately launched against Israel by neighboring States; a four weeks’ armistice, negotiated by the United Nations, became effective June 1, 1948, and hostilities were not' openly resumed until its termination, ‘ ‘ Although there were repeated incidents in which each side charged the other with violation of the truce ”. (
Thus, at the time of the incident in question, there was in effect an uneasy and an armed truce, and Israel was surrounded by hostile neighbors. It is a reasonable inference that the Government of Israel would not, under such circumstances, open a destructive attack on a munitions ship in one of its own harbors, unless it believed that the munitions aboard would be used against it either by its neighbors or by Israeli insurgents. The testimony referring to the presence on board of *427 armed members of the Irgun strongly indicates that the latter was the situation. No finding need be made as to whether the Altalena was controlled by insurgents or by external enemies of Israel, for it is clear from the facts that the insured’s death resulted “ directly or indirectly, or wholly or partly * * * from a state of war, riot or insurrection ”. Certainly plaintiff has not sustained the burden of proof imposed upon her to show that the insured’s death was within the coverage of the supplement.
Nor is it necessary to determine just what part decedent had in the hostilities, for the policy does not require ‘ ‘ participation ’ ’ by the insured in order for the exclusionary clause to apply. In Vanderbilt v. Travelers Ins. Co. (112 Misc. 248 [1920], affd. 202 App. Div. 738 [1st Dept., 1922], affd. 235 N. Y. 514 [1923]), it was held that recovery could not be had under a similar policy for the death of a passenger on the Lusitania', two Judges dissented in the Court of Appeals “ on ground that the word ‘ war ’ in the exception of the policy because of its association, means war in which the insured participates as a belligerent ” (235 N. Y. 515). But the majority held “ participation ” by the insured was not required by the exception.
Another exclusion is even more clearly applicable, to wit, the one dealing with ‘‘ injuries intentionally inflicted on the Insured by any person ”. There are two leading cases in New York on this question; in Lewis v. Ocean Acc. & Guar. Corp. (224 N. Y. 18) Judge Cardozo said, at page 21: “ But our point of view in fixing the meaning of this contract, must not be that of the scientist. It must be that of the average man (Brintons v. Turvey, supra [L. R. 1905 A. C. 230]; Ismay, Imrie & Co. v. Williamson, L. R. 1908 A. C. 437, 440). Such a man would say that the dire result, so tragically out of proportion to its trivial cause, was something unforeseen, unexpected, extraordinary, an unlooked-for mishap, and so an accident.”
And in Borneman v. John Hancock Mut. Ins. Co. (289 N. Y. 295) the insured died as a result of a fractured skull suffered during a fracas; the death was held to have been intentionally inflicted within the meaning of a policy apparently indistinguishable from the instant one; plaintiff contended that there was no evidence that the insured’s opponent intended to kill him; therein Judge Finch said, at pages 298-299: “ The connection between the intentional injuries and the dire result cannot be said as a matter of law to be too remote. * * * There was nothing trivial about the blows inflicted upon the insured by Brown. Such blows were no mere slaps in the face or mild push which might have caused a person to slip and *428 fall. On the contrary, the Mows were knockdown and knockout punches by a former prizefighter. Under such circumstances, the fall of the insured, with the concomitant injuries from contact with the pavement, cannot be said to be unforeseen, unexpected or extraordinary.”
In the instant case the Israeli forces opened a destructive bombardment of shot and shell on the Altalena while it was in Tel Aviv harbor, offshore but a short distance, and the death of a passenger as a result of such a barrage “ cannot be said to be unforeseen, unexpected or extraordinary ”. Indeed, it would have been a phenomenon if no one had been hurt. Serious injury to those on board was inevitable, and accordingly it must be held that the death of the insured resulted from injuries intentionally inflicted within the meaning of the policy.
The plaintiff objected to the introduction of much of the defense evidence upon the ground that it was not within the issues, since the exclusions had not been separately pleaded in the answer which consisted substantially of a general denial. Since decision was reserved on a motion to strike, it is necessary to rule upon this objection, particularly since defendant made no motion to conform its pleading to its proof.
It is difficult to reconcile the cases dealing with the question of which party has the burden of pleading and proving that a loss comes within the exclusionary clauses of an insurance policy. The problem is complicated by the fact that many cases consider what is nominally an exception, but actually is merely a restatement or definition of coverage. An example is the specific exclusion in the instant policy of self-destruction. If a death results from self-destruction it is not an accident. (See Whitlatch v. Fidelity & Cas. Co., 149 N. Y. 45, 49 [1896].) Other cases are influenced by the presumption against suicide (Begley v. Prudential Ins. Co., 1 N Y 2d 530, 533 [1956]) or other unlawful conduct (Slocovich v. Orient Mut. Ins. Co., 108 N. Y. 56 [1888]). In the instant case such factors are not present. An accident may still be an accident even though it results from an “ insurrection ”. It would then be within the coverage but for the exclusionary clause, and no presumption would be applicable.
The case most closely in point in the Appellate Division, First Department, is Carles v. Travelers Ins. Co. (238 App. Div. 43 [1933]). That case concerned a liability policy covering an elevator, which policy stated “ This agreement shall not apply to * * * injuries caused by any elevator while in charge of any person * * * under the age of fifteen *429 years ”. The Appellate Division unanimously held that the policy placed the burden on the plaintiff to plead and to prove that the elevator operator was over 15, since the provision in question “ distinctly related to coverage So in the instant case, the provision that the additional benefit should not be payable for death resulting from “insurrection” also relates to coverage. Since the burden of pleading and proving coverage, and the absence of the situations giving rise to the exclusionary clauses is on plaintiff, defendant may properly offer evidence showing the existence of such situations under its general denial.
In MacDonald v. Commercial Travelers Mut. Acc. Assn. (251 App. Div. 373, 376 [1st Dept., 1937]) the court expressly approved the trial court’s charge on the question of burden of proof in an action on an accident policy. The record on appeal shows that the trial court charged (fol. 281) that the burden of proof as to the defense that the accident occurred while the insured was intoxicated, one of the excluded risks, was on the plaintiff.
Other cases indicating that the burden of pleading or proving absence of excluded situations is on the plaintiff include Berkowitz v. New York Life Ins. Co. (256 App. Div. 324 [1st Dept., 1939]); Shawmut Coal & Coke Co. v. American Credit-Ind. Co. (232 App. Div. 29 [4th Dept., 1931]); Richelieu Nav. Co. v. Boston Ins. Co. (136 U. S. 408, 423 [1890]); New York & Cuba Mail S. S. Co. v. Continental Ins. Co. (117 F. 2d 404, 408 [C. C. A. 2d, 1941], cert, denied 313 U. S. 580 [1941]); Magnoli v. John Hancock Mut. Life Ins. Co. (192 Misc. 344 [1948]). And in the instant case, despite the reserved ruling as to the technical propriety of the defense, in view of the pleading, the plaintiff was not inhibited in any way from countering with any evidence available to her.
Accordingly, it is held that the evidence offered by defendant is admissible under its general denial, and that it was properly received by the court.
Judgment for the defendant.