W. M. C. A., INC.; R. Peter Straus; Joseph De Maio; Edward Lind; S. Thomas Delaney; Edward C. Brown; James J. McCafferty, Plaintiffs,

v.

Caroline K. SIMON, Secretary of State of the State of New York, Louis J. Lefkowitz, Attorney General of the State of New York, Abe Stark, President of the City Council of the City of New York; A. Holly Patterson, Chairman, Board of Supervisors, Nassau County; Owen M. Quinn, Chairman, Board of Supervisors, Westchester County, William J. Leonard, Chairman, Board of Supervisors, Suffolk County, Denis J. Mahon, James Powers, John R. Crews, Thomas Mallee, Commissioners, Board of Elections, New York City, Defendants.

United States District Court
S. D. New York.
Jan. 11, 1962.

Robinson, Silverman, Pearce & Aronsohn and Max Gross, New York City, for plaintiffs. Leonard B. Sand, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen., pro se., for Caroline K. Simon, Secretary of State of New York. Irving Galt, Asst. Sol. Gen., New York City, George C. Mantzoros, Gretchen W. Oberman, Asst. Attys. Gen., of counsel.

Leo A. Larkin, Corp. Counsel, New York City, for Abe Stark, President of the City Council of City of New York, and Denis J. Mahon, and others, Commissioners of the Board of Elections of the City of New York. Benjamin Offner, New York City, of counsel.

George W. Percy, Jr., County Atty. for the County of Suffolk, Riverhead, N. Y., for William J. Leonard, Chairman, Board of Supervisors. Stanley S. Corwin, Asst. County Atty., Greenport, N. Y., of counsel.

J. Oakey McKnight, County Atty. for the County of Nassau, Mineola, N. Y., for A. Holly Patterson, Chairman, Board of Supervisors, Nassau County. Harold E. Collins, Deputy County Atty. of the County of Nassau, Mineola, N. Y., of counsel.

Francis J. Morgan, County Atty. of Westchester County, White Plains, N. Y., for Owen M. Quinn, Chairman, Board of Supervisors, Westchester County. Irving Libenson, Asst. County Atty., Mt. Vernon, N. Y., of counsel.

Ferdinand I. Haber, Mineola, N. Y., for petitioner.

Eugene H. Nickerson, New York City, amici curiae.

Before WATERMAN, C. J., and RYAN and LEVET, D. JJ.

LEVET, District Judge.

This matter came before this court pursuant to Title 28 U.S.C.A. § 2284 as a result of the determination by the district court by opinion dated July 7, 1961 and order made pursuant thereto. See W. M. C. A. Inc. v. Simon, D.C.S.D.N.Y., 1961, 196 F.Supp. 758.

Before this statutory three-judge court, motions have been renewed by defendants Caroline K. Simon, Secretary of State of the State of New York, Louis J. Lefkowitz, Attorney General of the State of New York, A. Holly Patterson, Chairman, Board of Supervisors, Nassau County, Owen M. Quinn, Chairman, Board of Supervisors, Westchester County, William J. Leonard, Chairman, Board of Supervisors, Suffolk County, to dismiss the complaint in this action under Rule 12(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. on the grounds that (1) the court lacks jurisdiction over the subject matter and (2) the complaint fails to state a claim upon which relief can be granted.

The New York City defendants, to-wit, Abe Stark, President of the City Council of the City of New York, Denis J. Mahon, James Powers, John R. Crews, Thomas Mallee, Commissioners, Board of Elections, New York City, have answered the complaint, admitting the allegations thereof and in effect asking for the relief sought by the plaintiffs. Consequently, they have opposed the aforesaid motion.

## THE COMPLAINT

Plaintiffs in their various alleged capacities as taxpayers, citizens and voters seek (1) a declaratory judgment pursuant to 28 U.S.C.A. §§ 2201 and 2202 that New York's constitutional and statutory provisions governing apportionment of State, Senate and Assembly Districts (New York State Constitution, Art. III, §§ 2–5; New York State Law, McKinney's Consol.Laws, c. 57, §§ 121, 123) are unconstitutional under the due process and equal protection clauses of the Fourteenth Amendment of the United States; and (2) an injunction to restrain the New York Attorney General and Secretary of State, as well as the above-mentioned county and municipal officials,

from performing their required functions under the challenged laws.

Jurisdiction was asserted under the Civil Rights Act, 42 U.S.C.A. §§ 1983, 1988, and 28 U.S.C.A. § 1343(3). Plaintiffs sought the convening of a three-judge court, pursuant to 28 U.S.C.A. § 2281, insofar as an injunction is requested restraining enforcement or execution of a state statute and constitution.

Except for W. M. C. A. Inc., a New York corporation, characterized in the complaint as a "taxpayer" (par. 3 of complaint), plaintiffs are all individuals described as "citizens," "taxpayers," and "qualified voters" (par. 4 of complaint) from four of the five counties of New York City (none from Richmond County) and the Counties of Nassau and Suffolk. One of the plaintiffs, R. Peter Straus, further alleges that he is president of the corporate plaintiff, W. M. C. A. Inc. (par. 4 [a] of complaint).

Plaintiffs ask the court to declare Art. III, §§ 2–5 of the New York State Constitution violative of the due process and equal protection of the laws provision of the Fourteenth Amendment of the Constitution of the United States upon the ground that:

> " * * * the apportionment formula contained therein results, and must necessarily result, when applied to the population figures of the State in a grossly unfair weighting of both houses in the State legislature in favor of the lesser populated rural areas of the state to the great disadvantage of the densely populated urban centers of the state." (par. 12 of complaint)

The complaint specifically cites as the cause of this allegedly unconstitutional distribution of state legislative representation the New York Constitutional provisions requiring that:

> (a) " * * * the total of fifty Senators established by the Constitution of 1894 shall be increased by those Senators to which any of the larger counties become entitled in addition to their allotment as of 1894,

but without effect for decreases in other large counties * * * "

> (b) no county may have "four or more Senators unless it has a full ratio for each Senator * * * " and

> (c) " * * * every county except Hamilton shall always be entitled [in the Assembly] to one member coupled with the limitation of the entire membership to 150 members * * ." (par. 13 of complaint.)

Plaintiffs further allege that they have been subjected to "taxation without adequate representation" (par. 18 of complaint) and that the prevailing New York apportionment formula is "contrary to the prevailing philosophy of government in the United States and all Anglo-Saxon jurisdictions." (Complaint, par. 17)

The district court was therefore requested to convene a three-judge court to declare New York State Constitution, Art. III, §§ 2–5, unconstitutional and void; to restrain the Secretary of State from printing, mailing or otherwise distributing any election materials, to restrain the Attorney General from enforcing said constitutional and statutory provisions, and the aforementioned municipal and county officials from taking any action under such existing laws (complaint, pp. 15–16). Before the district judge, the defendants moved to dismiss the complaint for lack of jurisdiction over the subject matter and failure to state a claim upon which relief could be granted. The district judge in convening this three-judge court denied the motion to dismiss without prejudice to the right of the defendants to renew such motion before the three-judge statutory court. W. M. C. A. Inc. v. Simon, D.C.S.D.N.Y., 1961, 196 F.Supp. 758. This court is further asked "to retain jurisdiction of this cause until such time as the legislature of the State * * * provides for such apportionment of the State legislature as will insure to the urban voters of New York State the rights guaranteed them by the Constitution of the United States." (Complaint, par. 17)

744

## JURISDICTION

■ "Jurisdiction * * * is the power to consider and decide one way or the other, as the law may require, and is not to be declined merely because it is not foreseen with certainty that the outcome will help plaintiff." Geneva Furniture Mfg. Co. v. S. Karpen, 1915, 238 U.S. 254, 35 S.Ct. 788, 59 L.Ed. 1295. "Jurisdiction" connotes the power to decide a case on its merits. Kibler v. Transcontinental & Western Air, D.C. E.D.N.Y., 1945, 63 F.Supp. 724.

■ Even before the case of Gomillion v. Lightfoot, 1960, 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110, the United States Supreme Court never held that the federal courts were without jurisdiction over matters concerning legislative apportionment involving either Congressional or state legislative apportionments. Rather, it appears that the court has seen fit in specific instances to decline to exercise its equity power in that area.

Defendants in opposing jurisdiction herein rely on the determination in Colegrove v. Green, 1946, 328 U.S. 549, 66 S.Ct. 1198, 90 L.Ed. 1432, rehearing denied 1946, 329 U.S. 825, 828, 67 S.Ct. 118, 91 L.Ed. 701. It is argued that the Colegrove case decided that there was no jurisdiction in the federal courts in *suits involving apportionment*. An examination of the opinion will reveal that this interpretation is incorrect. In Colegrove, the plaintiff complained that the state legislature had failed to reapportion the Illinois *Congressional* Districts for some forty years and that inequality of voting power resulted. The statutory court concluded that it was bound by the decision in Wood v. Broom, 1932, 287 U.S. 1, 53 S.Ct. 1, 77 L.Ed. 131 [1] and, accordingly, dismissed the suit.

In the United States Supreme Court in Colegrove v. Green, supra, only seven justices participated. Chief Justice

Stone heard the argument, but died before the decision. Mr. Justice Jackson took no part in the consideration or decision of this case. Mr. Justice Frankfurter wrote the opinion of the court, in which Mr. Justice Reed and Mr. Justice Burton concurred. Mr. Justice Black dissented in an opinion in which Mr. Justice Douglas and Mr. Justice Murphy joined. This dissent, among other things, stated that (1) that Wood v. Broom, 287 U.S. 1, 53 S.Ct. 1, 77 L.Ed. 131 did not preclude granting equitable relief in this case (Colegrove); and (2) that jurisdiction existed.

An examination of the Frankfurter opinion, which affirmed the statutory court's dismissal of the complaint, reveals that Mr. Justice Frankfurter's position was, among other factors, based upon (1) a dismissal for *want of equity* (328 U.S. p. 553, 66 S.Ct. 1198); and (2) the fact that the authority for dealing with the problems involved resided with Congress (328 U.S. p. 554, 66 S.Ct. 1198). It was, I believe, solely to sustain the policy of Congressional control and the *consequent* lack of wisdom of court interference that he used such phrases as:

"The one stark fact that emerges from a study of the history of Congressional apportionment is its embroilment in politics, in the sense of party contests and party interests. * * *" (p. 554, 66 S.Ct. p. 1200)

"* * * Courts ought not to enter this political thicket. * * *" (p. 556, 66 S.Ct. p. 1201)

Mr. Justice Rutledge, making up the fourth of the prevailing justices, concurred in a separate opinion. Referring to Wood v. Broom, 287 U.S. 1, 53 S.Ct. 1, 77 L.Ed. 131, he wrote in part:

"* * * [As] the Court's opinion [i.e., in Wood] notes, four jus-

---

1. In Wood v. Broom, 1932, 287 U.S. 1, 53 S.Ct. 1, 77 L.Ed. 131, the court held that the Reapportionment Act of 1911, requiring that Congressional election districts be of contiguous and compact territory and as nearly as practicable of equal population, applied only to districts formed under that Act and not to the Apportionment Act of 1929, 2 U.S.C.A. § 2a.

tices thought the bill should be dismissed for want of equity.

"In my judgment this complaint [Colegrove v. Green] should be dismissed for the same reason. Assuming that the controversy is justiciable, I think the cause is of so delicate a character, in view of the considerations above noted, that the jurisdiction should be exercised only in the most compelling circumstances.

\* \* \* \* \* \*

"The right here is not absolute. And the cure sought may be worse than the disease.

"I think, therefore, the case is one in which the Court may properly, and should, decline to exercise its jurisdiction. Accordingly, the judgment should be affirmed and I join in that disposition of the cause." (328 U.S. pp. 565–566, 66 S.Ct. p. 1208)

Thus, at least four justices out of seven in Colegrove v. Green clearly concluded that jurisdiction existed but that the complaint should be dismissed for *want of equity.* It may be questioned whether the Frankfurter opinion itself holds otherwise since in 1960 in his opinion in Gomillion v. Lightfoot, 364 U.S. 339, 346, 81 S.Ct. 125, 129, 5 L.Ed.2d 110, in referring to Colegrove v. Green, he wrote:

" \* \* \* The Court affirmed the dismissal of the complaint on the ground that it presented a subject not meet for adjudication.\* \* \* \*"

\*[Note] "Soon after the decision in the Colegrove case, Governor Dwight H. Green of Illinois in his 1947 biennial message to the legislature recommended a reapportionment. The legislature immediately responded, Ill.Sess.Laws 1947, p. 879, and in 1951 redistricted again. Ill.Sess.Laws 1951, p. 1924."

The per curiam opinion in South v. Peters, 1950, 339 U.S. 276, 277, 70 S.Ct. 641, 642, 94 L.Ed. 834 involving a county unit system, did not state that an affirmance of a dismissal was based on lack of jurisdiction. Instead, the words are:

" \* \* \* We affirm. *Federal courts consistently refuse to exercise their equity powers in cases posing political issues arising from a state's geographical distribution of electoral strength among its political subdivisions.* See MacDougall v. Green, 1935, 335 U.S. 281, 69 S.Ct. 1 [, 93 L.Ed. 3]; Colegrove v. Green, 1946, 328 U.S. 549, 66 S.Ct. 1198, 90 L.Ed. 1432; Wood v. Broom, 1932, 287 U.S. 1, 8, 53 S.Ct. 1, 3, 77 L.Ed. 131; cf. Johnson v. Stevenson, 5 Cir., 1948, 170 F.2d 108." (Emphasis added.)

See also opinions of Mr. Justice Rutledge in Cook v. Fortson, 1946, 329 U.S. 675, 67 S.Ct. 21, 91 L.Ed. 596, and in MacDougall v. Green, 1948, 335 U.S. 281, 287, 69 S.Ct. 1, 93 L.Ed. 3. Also see observations of Mr. Justice Kavanaugh of the Supreme Court of Michigan regarding Colegrove v. Green in Scholle v. Hare, 1960, 360 Mich. 1, 104 N.W. 2d 63, 70–71.

As Mr. Justice Rutledge pointed out in two footnotes to his opinion in Colegrove, 328 U.S. 549, at pages 565 and 566, 66 S.Ct. 1198, at page 1208, 90 L.Ed. 1432:

"Want of equity jurisdiction does not go to the power of a court in the same manner as want of jurisdiction over the subject matter. \* \* \*

" 'The power of a court of equity to act is a discretionary one. \* \* \* Where a federal court of equity is asked to interfere with the enforcement of state laws, it should do so only "to prevent irreparable injury which is clear and imminent." ' American Federation of Labor v. Watson, 327 U.S. 582, [593,] 66 S.Ct. 761, 766 [90 L.Ed. 873,] and cases cited."

It is perhaps not amiss to state that the following justices of the Supreme

Court in one or more apportionment cases have outrightly held that jurisdiction was present: Brandeis[1], Stone[1], Roberts[1], Cardozo[1], Rutledge[2, 3, 4, 5], Black[2, 3, 4, 5, 6, 7, 8], Douglas[2, 4, 5, 6, 8], and Murphy[2, 3, 4, 5].

1. Broom v. Wood, 287 U.S. 1, 53 S.Ct. 1, 77 L.Ed. 131.

2. Colegrove v. Green, 328 U.S. 549, 66 S.Ct. 1198, 90 L.Ed. 1432.

3. Cook v. Fortson (Turman v. Duckworth), 329 U.S. 675, 67 S.Ct. 21, 91 L.Ed. 596.

4. Colegrove v. Barrett, 330 U.S. 804, 67 S.Ct. 973, 91 L.Ed. 1262.

5. MacDougall v. Green, 335 U.S. 281, 69 S.Ct. 1, 93 L.Ed. 3.

6. South v. Peters, 339 U.S. 276, 70 S.Ct. 641, 94 L.Ed. 834.

7. Remmey v. Smith, 342 U.S. 916, 72 S.Ct. 368, 96 L.Ed. 685.

8. Anderson v. Jordan, 343 U.S. 912, 72 S.Ct. 648, 96 L.Ed. 1328.

In Radford v. Gary, D.C.W.D.Oklahoma, 1956, 145 F.Supp. 541, 545–546, aff'd 1957, 352 U.S. 991, 77 S.Ct. 559, 1 L.Ed.2d 540, in a dissenting opinion, Wallace, District Judge, pointed out the limitations of the United States Supreme Court decision in Colegrove v. Green, as follows:

"* * * [A] careful reading of the majority opinion makes it amply clear that the Supreme Court was primarily concerned with faithfully adhering to the separation of powers doctrine, and desired to defer to the Congress, a co-equal branch of the federal government, to deal with the matter of congressional districting. A complete remedy law within the control of another branch of the federal government, and inasmuch as Congress possessed the basic right to pass upon the qualifications of its own members, the Federal Judiciary was not going to become embroiled in such controversy. * * *"

In Dyer v. Kazuhisa ABE, D.C.D.Hawaii, 1956, 138 F.Supp. 220, 233–234, McLaughlin, Chief Judge, wrote:

"* * * Colegrove v. Green definitely decided that a case involving voting districts was a judiciable question over which a federal court had jurisdiction. Three justices held the court lacked jurisdiction or should not exercise what jurisdiction it had. Three justices felt jurisdiction existed and should be exercised. The deciding vote was cast by Mr. Justice Rutledge. He stated jurisdiction was present, but should not be exercised. Thus *a majority held that a justiciable question was before it, but that in the discretion of the court, equitable jurisdiction should not be exercised.*" (Emphasis added)

Moreover, as Solicitor General Cox states on page 13 in the brief for the United States as amicus curiae submitted in Baker v. Carr before the Supreme Court:

"3. In any event, the plurality opinion in Colegrove v. Green, concerning state malapportionment of Representatives, should not be applied to the significantly different problem of state legislative malapportionment. That opinion stated that Article I, Section 4, of the Constitution gives exclusive authority to Congress to secure fair congressional apportionment. But neither that section nor any other part of the Constitution gives Congress such exclusive power with regard to representation in state legislatures." (Brief No. 103)

Subsequent to Colegrove v. Green, supra, the United States in Colegrove v. Barrett, 1946, 330 U.S. 804, 67 S.Ct. 973, 91 L.Ed. 1262, in a per curiam decision stated:

"The motion to dismiss is granted and the appeal is dismissed for want of a substantial federal question. * * *"

In a number of cases in which state legislative apportionments have been subjected to attack, the statutory courts or district courts definitely assumed jurisdiction to determine the constitutionality of such state enactments.

In MacDougall v. Green, D.C.N.D.Ill., E.D., 1948, 80 F.Supp. 725, aff'd 1948, 335 U.S. 281, 69 S.Ct. 1, 93 L.Ed. 3, the statutory court considered the complaint, filed Findings of Fact and Conclusions of Law relative to the issues of the constitutionality of state nominating petition requirements, and held that the provisions were not repugnant or violative of any provision of the United States Constitution.

In South v. Peters, D.C.N.D.Ga., 1950, 89 F.Supp. 672, aff'd 1950, 339 U.S. 276, 70 S.Ct. 641, 94 L.Ed. 834, the statutory court held a trial at which evidence was presented and made and filed Findings of Fact and Conclusions of Law determining that there was no constitutional violation.

In Remmey v. Smith, D.C.E.D.Pa., 1951, 102 F.Supp. 708, aff'd 1952, 342 U.S. 916, 72 S.Ct. 368, 96 L.Ed. 685, a statutory court, in a matter involving the Pennsylvania Apportionment Act, declined to act upon the ground that the suit was prematurely brought, did not dismiss because of lack of jurisdiction but for want of equity.

In Magraw v. Donovan, D.C.D.Minn., 1958, 159 F.Supp. 901, Devitt, District Judge, held that the question of the invalidity of a Minnesota legislative redistricting act was within the jurisdiction of the court. It should also be noted that although the three-judge court, when convened, deferred action pending legislative adjustment, that court retained jurisdiction of the case. Magraw v. Donovan, D.C.D.Minn., 1958, 163 F. Supp. 184, 188.

The Supreme Court "has never held that apportionment cases necessarily raise non-justiciable questions." As Solicitor General Cox points out in the brief for the United States as amicus curiae in Baker v. Carr at page 24:

" * * * On the contrary, it has passed on the merits of apportionment systems in several cases and has granted relief in some of them. Thus, in Smiley v. Holm, 285 U.S. 355 [52 S.Ct. 397, 76 L.Ed. 795], the Court held that the existing Minnesota apportionment of United States Representatives did not meet federal requirements because the governor had refused to approve the bill, and accordingly, the Court ordered an election-at-large. The Court also held a state apportionment law invalid (the governor had vetoed it) and ordered an election-at-large in Carroll v. Becker, 285 U.S. 380 [52 S.Ct. 402, 76 L.Ed. 807]. And in Koenig v. Flynn, 285 U.S. 375 [52 S.Ct. 403, 76 L.Ed. 805], the Court affirmed a decision of a state court holding that, in the absence of a valid districting statute (the governor had not approved the resolution of the state legislature) to conform to the increase in Representatives allotted to a state by Congress, the additional Representatives must be elected at large." (Brief No. 103)

The recent decision in Gomillion v. Lightfoot, 1960, 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110, involved a clear-cut assumption of jurisdiction in a *state* apportionment case. While this determination was based upon the Fifteenth Amendment, a reasonable inference is that the court intended to indicate that it would *test* the validity of *state* apportionment by any applicable federal constitutional provision. The step assumed by the court is to *consider*. This does not depend upon whether equitable intervention eventually ensues or upon the result reached on the merits after jurisdiction is entertained.

The recent action of the Supreme Court in granting reargument in the October 1961 Term of the case of Baker v. Carr, 1961, 366 U.S. 907, 81 S.Ct. 1082, involving a Tennessee state legislative apportionment, indicates an apparent continuation of this policy. (For

748

the decision below in Baker v. Carr, see D.C., 175 F.Supp. 649 and 179 F.Supp. 824.) Baker v. Carr concerns the failure of a state legislature to comply with a state constitutional requirement and, hence, the questions involved are not equivalent to the issues in the case at bar. There, the petitioners *seek enforcement* of a state provision; here, the plaintiffs *seek to bar enforcement*.

In the Solicitor General's amicus curiae brief (pp. 32–33), heretofore mentioned, he comments pertinently on the Civil Rights Acts of 1957 and 1960, as follows:

"The enactment by Congress, since the Colegrove decision, of the Civil Rights Acts of 1957 and 1960, 71 Stat. 637, 74 Stat. 86, also affects the reliance in the plurality opinion on the exclusively political nature of the election process. The 1957 Civil Rights Act included a provision expressly conferring jurisdiction upon the federal district courts of actions 'to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, *including the right to vote*.' 28 U.S.C. 1343(4) (emphasis added). Congress thereby made clear that, in its view, questions involving 'political' rights, 'including the right to vote,' were 'meet for judicial determination.' Cf. Colegrove v. Green, supra, 328 U.S. at 552 [66 S.Ct. 1198, 90 L.Ed. 1432]. The 1960 Act specifically authorized the federal courts to consider applications for registration for voting under certain circumstances, so as to afford complete judicial protection against discrimination. 74 Stat. 90 [42 U.S.C.A. § 1971]. Congress thereby emphasized, once again, the national policy of relying on the Judiciary as the organ through which the right to vote is to be made fully effective. Both Acts express the intent of Congress and the national consensus that, whatever disagreement may exist as to other civil rights, (1)

the right to vote should be afforded federal protection to the fullest possible extent, and (2) that protection should principally take the form of court action." (Brief No. 103)

In short, in view of the foregoing, the conclusion appears inevitable that basic jurisdiction of the subject matter exists. We, therefore, deny the motion to dismiss because of lack of jurisdiction.

### QUESTION OF SUFFICIENCY OF COMPLAINT

■ Facts which for the purpose of this determination we must consider as admitted include the following:

1. The New York State Constitutional and statutory provisions in reference to apportionment of State Senators and Assemblymen which are set forth as exhibits in the complaint.

2. The fact that the citizen population of the senatorial districts varies from as low as 146,666 in the Thirty-Ninth Senatorial District (Counties of Essex, Saratoga and Warren) to as high as 344,547 in the Twenty-Sixth and Twenty-Ninth Districts (located in Bronx County). (See Exhibits III and IV attached to complaint)

3. The fact that the citizen population of the assembly districts varies from as low as 14,066 (Schuyler County) and 17,461 (Yates County) to as high as 115,000 in Bronx County. (See Exhibits III and IV attached to complaint)

4. That similar results, perhaps with somewhat greater spread, will be likely to occur as a result of the apportionment in 1962 based upon the 1960 census. (See Exhibits I, II and V attached to complaint)

5. In general, that the senatorial districts and assembly districts of certain urban areas contain a greater citizen population than the districts in so-called rural areas.

6. That no failure of the legislature to comply with the state constitution is claimed and only the so-called malapportionment of senatorial and assembly

districts is here involved. (See minutes of November 15, 1961, pp. 32–33)

I believe that this court may take judicial notice [2] of certain additional facts, as follows:

1. The revised Constitution of 1894 containing the present apportionment provisions was submitted to the voters on November 6, 1894 and was approved by a vote of 410,697 to 327,402; the legislative apportionment was approved by a vote of 404,335 to 350,625. See Legislative Manual, New York 1961–1962, page 289. On November 7, 1916, on a vote to revise the Constitution and amend the same, the vote was 506,563 for and 658,269 against. Id. at 292. On November 5, 1957, the vote for a convention to revise the Constitution and amend the same was 1,242,568 for and 1,368,063 against. Id. at 309.

2. In practically every state apportionment results in "over-representation" of the least populated areas. (See Reapportionments of State Legislatures by Lashley G. Harvey, 17 Law & Contemporary Problems 364, 1952; National Municipal League, Compendium on Legislative Apportionment (1st Ed. 1960)).

3. The State of New York is divided into 62 counties extending from Suffolk County westward to Chautauqua County, from Richmond County in the south to Saint Lawrence, Franklin and Clinton Counties along the St. Lawrence River and the Canadian border, with a total area of 49,576 square miles, with a variety of agricultural, industrial and other economic interests.

4. New York City with a population of 7,781,984 or 46.0% of the state's population of 16,782,304, has 65 assemblymen or 43.3% of the total assembly, and 25 senators or 43.1% of the total number of senators, while the counties other than those in New York City, with 54.0% of the population, have 56.7% of the total assembly and 56.9% of the senate seats.

5. The courts of the State of New York have approved the present methods of apportionment. Matter of Sherrill v. O'Brien, 1907, 188 N.Y. 185, 81 N.E. 124; Matter of Fay, 1943, 291 N.Y. 198, 52 N.E.2d 97; see also Matter of Dowling, 1915, 219 N.Y. 44, 113 N.E. 545.

There is no authoritative indication that the relative weight accorded individual votes in elections for the state legislature, pursuant to the applicable provisions of the State Constitution, is protected by the equal protection clause of the Fourteenth Amendment. In fact, the contrary seems true. Section 5 of the Fourteenth Amendment provides: "The Congress shall have power to enforce, by appropriate legislation, the provisions of this article." Obviously the enforcement of the evident prohibitions of the Fourteenth Amendment is no invasion of state sovereignty, since the people of the states have by the Constitution so empowered Congress to act. Ex parte Virginia, 1879, 100 U.S. 339, 346, 25 L.Ed. 676.

■ To assert, however, that the Fourteenth Amendment was intended to give Congress or the federal courts control of the state constitutional provisions for the apportionment of districts for the election of the state legislators is beyond reasonable belief. There is apparently no express or implied incorporation of such power. If it exists, it certainly has never been exercised. Consideration of the existing state constitutions and statutes in force at the time of the adoption of the Fourteenth Amendment creates formidable doubt with respect to any such intent.[3]

---

2. People v. Wood, 1892, 131 N.Y. 617, 30 N.E. 243; Field v. Clark, 1892, 143 U.S. 649, 12 S.Ct. 495, 36 L.Ed. 294; Stawski v. John Hancock Mutual Life Ins. Co., 1957, 7 Misc.2d 424, 163 N.Y.S. 2d 155; People v. Snyder, 1869, 41 N.Y. 397; Taylor v. City of White Plains, Sup., 1954, 135 N.Y.S.2d 773.

3. In this connection, Mr. Justice Edwards in Scholle v. Hare, 1960, 360 Mich. 1, 104 N.W.2d 63, stated in part:
"Of the 37 States in the union in 1868, 9 had constitutional provisions for election of representatives to at least 1 of the houses of their legislatures which based representation on constitutionally

The historical basis of county representation was set forth in brief for the United States as amicus curiae on reargument of Baker v. Carr at the October 1961 Term of the Supreme Court in these words:

"* * * Historically, the claim of political subdivisions to representation regardless of size has been an important reason for departing from the strict rule of apportionment according to population. Early in our history the town or county was often a dominant unit of government, and the colonial assembly and later the State legislature were composed of representatives from these entities. Since it was the town or county that was being represented, in a very real sense, and not the people directly, it was natural to guarantee each unit at least one representative in one, and sometimes both, of the branches of the legislature. Such provisions are still found in the constitutions of twenty-seven States. * * *" (pp. 28–29, Brief No. 6)

■ The Fourteenth Amendment did not invest and did not attempt to invest Congress with power to legislate upon subjects which are within the domain of state legislation. In re Rahrer, 1891, 140 U.S. 545, 554–555, 11 S.Ct. 865, 35 L.Ed. 572. The states have broad powers to determine the conditions under which the right of suffrage may be exercised in the absence of discrimination condemned by the Constitution (such as the Fifteenth and Nineteenth Amendments).[4] This thought was expressed by Chief Justice Waite in Minor v. Happersett, 1874, 21 Wall. 162, 175, 88 U.S. 162, 175, 22 L.Ed. 627, when he wrote:

"* * * [A]fter the adoption of the fourteenth amendment, it was deemed necessary to adopt a fifteenth, as follows: 'The right of citizens of the United States to vote shall not be denied or abridged by the United States, or by any State, on account of race, color, or previous condition of servitude.' The fourteenth amendment had already provided that no State should make or enforce any law which should abridge the privileges or immunities of citizens of the United States. If suffrage was one of these privileges or immunities, why amend the Constitution to prevent its being denied on account of race, &c? Nothing is more evident than that the greater must include the less, and if all were already protected why go through with the form of amending the Constitution to protect a part?"

The Minor case held in effect that the limitation of suffrage to male citizens was not a violation of the Fourteenth Amendment.

■ The Fifteenth Amendment and the Nineteenth Amendment together provide that the rights of citizens of the United States to vote shall not be denied

---

described legislative districts with constitutionally allocated representation without any pretense of guarantee of equality of popular representation. These States are Vermont, Rhode Island, Connecticut, New Hampshire, New Jersey, Delaware, Maryland, South Carolina and Nevada. [p. 111]

\* \* \* \* \*

"Between 1868 and the present time, 13 additional States have entered the Union. [p. 113]

\* \* \* \* \*

"Of the 13 States whose Constitutions were approved for admission, 8 such Constitutions (for the States of Arizona, Alaska, Hawaii, Idaho, Montana, New Mexico, Oklahoma, Utah,) contained provisions for election of at least 1 legislative house which fell into 1 of the 3 categories of disproportion \* \* \*." (pp. 113–114)

4. Lassiter v. Northampton County Bd. of Elections, 1959, 360 U.S. 45, 79 S.Ct. 985, 3 L.Ed.2d 1072; Smith v. Allwright, 1944, 321 U.S. 649, 64 S.Ct. 757, 88 L. Ed. 987, rehearing denied, 322 U.S. 769, 64 S.Ct. 1052, 88 L.Ed. 1594; Guinn v. United States, 1915, 238 U.S. 347, 35 S.Ct. 926, 59 L.Ed. 1340. See also United States v. Cruikshank, 1876, 92 U.S. 542, 23 L.Ed. 588; Davis v. Schnell, D.C.D.Ala., 1949, 81 F.Supp. 872, aff'd, 336 U.S. 933, 69 S.Ct. 749, 93 L.Ed. 1093.

or abridged by the United States or by any state on account of race, color, previous condition of servitude or sex. "In fact, the very command of the Amendment [i. e., the Fifteenth] recognizes the possession of the general power by the State, since the Amendment seeks to regulate its exercise as to the particular subject with which it deals. * * * [T]he amendment does not change, modify, or deprive the states of their full power as to suffrage except, of course, as to the subject with which the Amendment deals and to the extent that obedience to its command is necessary." Guinn v. United States, 1915, 238 U.S. 347, 362, 35 S.Ct. 926, 930, 59 L.Ed. 1340. See also Pope v. Williams, 1904, 193 U.S. 621, 24 S.Ct. 573, 48 L.Ed. 817. The right to suffrage is not inherent in citizenship, nor is it a natural and inalienable right. Unless restrained by constitutional limitations, the legislature may lawfully confer the right of suffrage upon such portions of the citizens of the United States, as it may deem expedient, and may deny that right to others. United States v. Miller, D.C.D.Ind., 1901, 107 F. 913. See also United States v. Reese, 1875, 92 U.S. 214, 23 L.Ed. 563.

The Fourteenth, Fifteenth and Nineteenth Amendments were not designed to abrogate the Tenth Amendment, which states: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people," except to the extent reasonably indicated by the restrictions of such subsequent amendments. Siegel v. Ragen, 7 Cir., 1950, 180 F.2d 785, cert. denied, 339 U.S. 990, 70 S.Ct. 1015, 94 L. Ed. 1391, rehearing denied, 340 U.S. 847, 71 S.Ct. 12, 95 L.Ed. 621. See United States v. Butler, 1936, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477; Gordon v. United States, 1864, 117 U.S. 697; Collector v. Day, 1870, 11 Wall. 113, 124, 78 U.S. 113, 124, 20 L.Ed. 122.

The United States Supreme Court has repeatedly acted adversely upon claims involving complaints similar to the one in this case. Cook v. Fortson, D.C.N.D. Ga., 1946, 68 F.Supp. 624 and Turman v. Duckworth, D.C.N.D.Ga., 1946, 68 F. Supp. 744 (county unit system), appeals dismissed, Cook v. Fortson, 329 U.S. 675, 67 S.Ct. 21, 91 L.Ed. 596; MacDougall v. Green, D.C.N.D.Ill., 1948, 80 F.Supp. 725 (requirements of signatures of 200 qualified voters from each of at least 50 counties as a prerequisite for nomination for state office), aff'd, 1948, 335 U.S. 281, 69 S.Ct. 1, 93 L.Ed. 3; South v. Peters, D.C.N.D.Ga., 1950, 89 F.Supp. 672 (county unit rule), aff'd, 1950, 339 U.S. 276, 70 S.Ct. 641, 94 L.Ed. 834 ("Relief prayed for be denied and that the petition be dismissed.'); Remmey v. Smith, D.C.E.D.Pa., 1951, 102 F.Supp. 708 (complaint—malapportionment of state legislative districts), appeal dismissed, 1952, 342 U.S. 916, 72 S.Ct. 368, 96 L.Ed. 685 (lack of a substantial federal question); Kidd v. McCanless, 1956, 200 Tenn. 273, 292 S.W.2d 40 (malapportionment of state legislative districts), appeal dismissed, 1956, 352 U.S. 920, 77 S.Ct. 223, 1 L.Ed.2d 157; Radford v. Gary, D.C. W.D.Okla., 1956, 145 F.Supp. 541 (state legislature apportionment of state legislative districts), aff'd 1957, 352 U.S. 991, 77 S.Ct. 559, 1 L.Ed.2d 540; Matthews v. Handley, D.C.N.D.Ind., 1959, 179 F. Supp. 470 (attempt to have federal court declare a state revenue unconstitutional because enacted by a state legislature in which districts were not apportioned as required by state constitution), aff'd, 1959, 361 U.S. 127, 80 S.Ct. 256, 4 L.Ed. 2d 180.

Substantial authority thus supports the position taken by this present statutory court. In MacDougall v. Green, 1948, 335 U.S. 281, 69 S.Ct. 1, 93 L.Ed. 3, in a per curiam opinion, the majority of the Supreme Court stated:

"* * * To assume that political power is a function exclusively of numbers is to disregard the practicalities of government. Thus, the Constitution protects the interests of the smaller against the greater by giving in the Senate entirely unequal representation to populations. It would be strange indeed, and doc-

trinaire, for this Court, applying such broad constitutional concepts as due process and equal protection of the laws, to deny a State the power to assure a proper diffusion of political initiative as between its thinly populated counties and those having concentrated masses, in view of the fact that the latter have practical opportunities for exerting their political weight at the polls not available to the former. The Constitution—a practical instrument of government—makes no such demands on the States. Colegrove v. Green, 328 U.S. 549, 66 S.Ct. 1198, 90 L.Ed. 1432, and Colegrove v. Barrett, 330 U.S. 804, 67 S.Ct. 973, 91 L.Ed. 1262." 335 U.S. at 283–284, 69 S.Ct. at 3 (Emphasis added) (Nominating procedures.)

Cf. Wood v. Broom, 1932, 287 U.S. 1, 53 S.Ct. 1, 77 L.Ed. 131, where Justices Brandeis, Stone, Roberts and Cardozo were of the opinion that the decree should be dismissed "for want of equity" (congressional districts involved).[5]

Opinions by previous three-judge courts are in agreement with this court. In a per curiam majority opinion in South v. Peters, D.C.N.D.Ga.1950, 89 F. Supp. 672, the court stated:

"Plaintiff's proposition that a vote in Fulton County has only one tenth the force that it would have but for the county unit rule of the Neill Primary Act, which is unjust and undemocratic, has strong appeal, but it is not a matter for this court to decide. Our question is primarily whether the federal Constitution is violated thereby. In general, that Constitution is not committed to elections by the people over the whole affected territory in which every vote will have equal weight, but rather the voting is by smaller units of unequal population and unequal voting power for each vote. * * * [p. 679]

* * * * *

"We therefore cannot say there is any general constitutional principle forbidding or discouraging the use of territorial subdivisions in fixing the manner of conducting an election by the people. Whether subdivisions shall be made and how closely they shall be equalized is a matter of policy, that is to say, is a political question in which courts of equity may not meddle to set up their own ideas. * * * [p. 679–680]

* * * * *

"The federal Constitution does not take from the States their right to set up their own internal organization and prescribe the manner of State elections. * * *" (p. 680)

Biggs, Circuit Judge, for a three-judge court in Remmey v. Smith, supra declared:

"* * * A fortiori if a court of the United States should not compel a State Legislature to effect a reapportionment relative to the national representative elective system, it should not do so in respect to an apportionment system whereby Representatives in States legislatures are to be chosen. An action such as that at bar may strike at the very heart of our dual system of government under which the United States and the States must remain sovereign in their spheres. * * *" (p. 710)

In a concurring opinion by Bard, District Judge, in the same case, it was stated:

"The free and untrammeled right or privilege of suffrage is not given

---

5. Holmes, District Judge, on a three-judge court, dissenting in Broom v. Wood, D.C. S.D.Miss., 1932, 1 F.Supp. 134, and whose position was in effect sustained by the United States Supreme Court in Wood v. Broom, supra:

"* * * The equal protection clause of the Fourteenth Amendment is inapplicable. No statutory or constitutional provision gives any elector the right to vote in a district numerically equal in inhabitants to every other congressional district. * * *" (1 F.Supp. at 137)

by any Article of or Amendments to the Federal Constitution. * * * " (p. 711)

The Supreme Court of Wisconsin in State ex rel. Thomson v. Zimmerman, 1953, 264 Wis. 644, 60 N.W.2d 416, 61 N.W.2d 300, held that a statute providing that area shall be figured at 30% and population at 70% in establishing the 33 districts each of which is entitled to a representative in the state senate did not deprive citizens of equal protection of the laws contrary to the Fourteenth Amendment of the federal Constitution. "We consider that it lies with the people of the state to determine the basis upon which legislative districts are to be established and their will in this is final." [6]

The plaintiffs charge the State of New York with a "purposeful and systematic plan" to discriminate against certain geographic areas and classes of persons. (Par. 17 of complaint) However, the rule is general with reference to the enactments of all legislative bodies that the courts cannot, with certain exceptions, inquire into the motives of the legislators. Soon Hing v. Crowley, 1885, 113 U.S. 703, 710, 5 S.Ct. 730, 28 L.Ed. 1145. "The knowledge and good faith of a legislature are not open to question. It is conclusively presumed that a legislature acts with full knowledge, and in good faith." United States v. Des Moines Nav. & Ry. Company, 1892, 142 U.S. 510, 544, 12 S.Ct. 308, 317, 35 L.Ed. 1099. See also Sonzinsky v. United States, 1937, 300 U.S. 506, 513, 57 S.Ct. 554, 81 L.Ed. 772; McGowan v. State of Maryland, 1961, 366 U.S. 420, 468, 469, 81 S.Ct. 1101, 6 L.Ed.2d 393.

I, therefore, find that the complaint fails to state a claim upon which relief can be granted and accordingly, it must be dismissed. In this connection, I have not considered the affidavits separately submitted by the plaintiffs, since I have concluded that the motion may be determined upon the complaint (including exhibits attached) alone.

## WANT OF EQUITY AND WANT OF JUSTICIABILITY

 If the insufficiency of the complaint be not adequate to require dismissal of the complaint, as I believe it is, then the want of equity in the relief sought, or, to view it slightly differently, want of justiciability, clearly demands dismissal.

In New York State, as already enunciated, the present system of legislative apportionment, whatever may be its merits, has been imbedded in a state constitution which has been approved by referendum of the voters who have subsequently voted to retain the constitution in which the method adopted is contained. The legislative acts are wholly in accord with the state constitutional requirements.

In whatever manner we may view the basis of Justice Frankfurter's admonition in Colegrove v. Green, supra, that "Courts ought not to enter this political thicket," the proposed and unprecedented direction by a federal court of the *state constitutional provisions* in respect to state legislative apportionments would initiate a far-reaching revision of federal-state relationships. Efforts to control the basic law of the states in such matters would impose an imponderable burden upon the federal courts in nearly all of the states of this union. The inherent impracticabilities of such a course demonstrate the want of equity or justiciability in such a procedure.

Whether the Supreme Court of the United States in disposing of Baker v.

---

6. Anthony Lewis (Legislative Apportionment and the Federal Courts, 71 Harv.L. Rev. 1057, April 1958) has stated:
 " * * * interests other than population may be important in devising a system of representation. For example, geographic areas may have political interests that suggest their use as units of representation. The only system based entirely on population, without regard to geography, would be one of proportional representation. Representation based on districts of approximately equal population tends to accommodate both geographic and numerical interests."

Carr, supra, recently reargued and now sub judice, will decide that the Tennessee voters under federal constitutional provisions have a right to federal enforcement of the Tennessee state constitutional apportionment provisions, is yet to be determined. That question involves effectuation of a specific plan. This case involves interference with the enforcement of state constitutional provisions as well as some consequential but ill-defined supervision of the formation and enactment of a substitute plan.

The teachings of the decisions of the Supreme Court show that want of equity or justiciability demands the dismissal of this suit. These factors, I believe, were the decisional rationale revealed in cases in which the complaint was dismissed because of the "want of a substantial federal question" or because of "want of equity." See Colegrove v. Green, supra; Colegrove v. Barrett, supra; MacDougall v. Green, supra; South v. Peters, supra; Remmey v. Smith, supra.

Thus, want of equity and justiciability demand denial of the relief sought.

In view of the foregoing, it is unnecessary to pass upon the motion to dismiss as to the plaintiff W.M.C.A., Inc. upon the ground of lack of standing.

The complaint is dismissed.

RYAN, District Judge (concurring).

I concur with Judge LEVET and the conclusions he has reached that this Court has jurisdiction to entertain this suit and that the complaint should be dismissed on its merits.

Although there is authority for argument that federal courts lack jurisdiction to pass on the propriety of state legislative apportionment, Colegrove v. Green, 328 U.S. 549, 66 S.Ct. 1198, 90 L.Ed. 1432 (1946), subsequent decisions [1] appear to hold that federal courts do have jurisdiction to rule on the Constitutional propriety of state legislative apportionment but that this jurisdiction should be exercised only under the most compelling circumstances.

The breadth and scope of the compelling reasons which would support exercise of this jurisdiction have not been specifically defined but Gomillion v. Lightfoot, 364 U.S. 339, 346, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960), seems to carry the implication that an attempt by a state to abridge the vote or operate to effectively discriminate against any particular class or group through the fixing of internal political boundaries or legislative election districts will lie within this area of compelling circumstances. Apparent and patent violation of the 15th Amendment or of any other specific injunction of the Constitution would then lift the propriety of state action out of the so-called political sphere.

There is no claim made here that the apportionment formula before us or the laws enacted to apply it effect a discrimination against any particular racial or religious group. The complaint is that the method of apportionment gives rise solely to territorial or purely geographical discrimination which grossly dilutes the vote of urban dwellers. Judicial interference by federal courts with the power of the state to create internal political or geographical boundaries affecting the right of suffrage can not be supported by mere territorial discrimination and nothing more.

This Court, while possessing jurisdiction, on the undisputed facts before us should not interfere in what Mr. Justice Frankfurter has characterized as a "political thicket". I concur with Judge LEVET in exercising jurisdiction and in dismissing the complaint.

1. Thurman v. Duckworth, 68 F.Supp. 744; appeal dismissed 329 U.S. 675, 67 S.Ct. 21, 91 L.Ed. 596; South v. Peters, 89 F.Supp. 672, aff'd 339 U.S. 276, 70 S.Ct. 641, 94 L.Ed. 834; Kidd v. McCanless, 200 Tenn. 273, 292 S.W.2d 40, appeal dismissed 352 U.S. 920, 77 S.Ct. 559, 1 L.Ed.2d 540; Radford v. Gary, D.C., 145 F.Supp. 541, aff'd 352 U.S. 991, 77 S.Ct. 559, 1 L.Ed.2d 540; Magraw v. Donovan, D.C., 163 F.Supp. 184.

WATERMAN, Circuit Judge (concurring).

I concur in denying relief to the complainants.

I believe we must follow the majority result in Colegrove v. Green, 328 U.S. 549, 66 S.Ct. 1198, 90 L.Ed. 1432 (1946). Whether we deny relief by adopting the rationale of the three Justices who labeled apportionment matters "political questions" or by adopting that of Mr. Justice Rutledge who thought the Court should decline to exercise its equity jurisdiction, the result in the present case is the same —a dismissal of the complaint without reaching the merits because the issues are "not meet for adjudication." Frankfurter, J., in Gomillion v. Lightfoot, 364 U.S. 339, 346, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960), explaining the decision in Colegrove v. Green.

My colleagues deny relief after having taken jurisdiction of the case. I do not quarrel directly with them, but because I believe this litigation is not justiciable I think it appropriate to point out the admonition of Mr. Justice Frankfurter relative to "jurisdiction" stated by him in Colegrove.

"We are of the opinion that the petitioners ask of this Court what is beyond its competence to grant. This is one of those demands on judicial power which cannot be met by verbal fencing about 'jurisdiction.' It must be resolved by considerations on the basis of which this Court, from time to time, has refused to intervene in controversies. It has refused to do so because due regard for the effective working of our Government revealed this issue to be of a peculiarly political nature and therefore not meet for judicial determination."

Judge LEVET also recognizes that Colegrove may require us to dismiss this case for lack of justiciability. I concur in this part of his opinion. I cannot concur in his full opinion, however, for I think it unnecessary and undesirable at this time to pass on the justiciability of this or similar future litigation in the event that Colegrove v. Green should cease to be controlling authority, and I do not think it appropriate for me to express any views with reference to whether the present legislative apportionment in the State of New York violates the Fourteenth Amendment to the United States Constitution.

Therefore, inasmuch as the plaintiffs have failed to state a claim upon which relief can be granted, I concur with my colleagues in dismissing the complaint.