GATES KIDD et al.

*v.*

GEORGE F. McCANLESS, Attorney General of the State
of Tennessee et al.

(*Nashville*, December Term, 1955)

Opinion filed April 5, 1956.

Rehearing Denied June 8, 1956.

Knox Bigham, James M. Glasgow and Jack Wilson, Assistant Attorneys General, for appellants.

Haynes Miller and Mayne Miller, and Kent Herrin, Johnson City, Peter Hampton, Elizabethton, Hobart F. Atkins, Knoxville, Maclin P. Davis, Jr., and Barksdale, Hudgins & Osborn, Nashville, for appellees.

Mr. Justice Swepston delivered the opinion of the Court.

This is an appeal by the Attorney General from a decree overruling certain grounds of appellants' demurrer to the original bill, and declaring that the legislation providing for the apportionment of Senators and Representatives in the General Assembly, the same being Chapter 122 of the Public Acts of 1901, as amended, now codified as Sections 3-101 et seq. of Tennessee Code Annotated, has expired and is no longer effective.

The ultimate question involved is obviously of great public importance, and we have given the same the study to which the question is entitled. Examination of the Chancellor's opinion discloses that he likewise gave the matter serious and extended study and consideration.

In the view that we take of the matter, however, it will not be necessary to state at length and in detail the various pleadings filed by the numerous parties involved in the litigation, nor will it be necessary to discuss the numerous questions of law raised by the demurrers and passed upon by the Chancellor.

The suit was filed on March 8, 1955, by Gates Kidd and four other voters and residents of Washington County, Tennessee, along with six voters and residents of Carter County, and two voters and residents of Davidson County, against the Attorney General of Tennessee, the Secretary of State, the members of the State Board of Elections, the members of the Republican State Primary Election Commission, the members of the Democratic State Primary Election Commission, the members of the Washington County Election Commission, the Carter County Election Commission, and the Davidson County Election Commission. By their bill they prayed, in addition to process and general relief, a declaratory judgment of the court declaring the Apportionment Act of

1901, as amended, to be unconstitutional for the following reasons: (1) no census of qualified voters was made as required by Section 4 of Article II of the Constitution; (2) the Act was unconstitutional and discriminatory when enacted; (3) the Senate Joint Resolution adopted by the Legislature in 1901 was not followed when said Act was enacted by the General Assembly; (4) the Apportionment Act of 1901 became unconstitutional and obsolete in 1911 because a new enumeration and apportionment was not made in that year; and (5) because the three counties where the complainants reside and vote are now entitled to greater representation in the Legislature than is afforded them by said Act. The bill alleges and charges because of this last assigned reason the respective complainants who reside and vote in their respective counties are denied the right to equal franchise and suffrage. The bill further alleges in support of these charges that a minority of approximately 37% of the voting population of the State now elects and controls 20 of the 33 members of the Senate; that a minority of 40% of the voting population of the State now controls 63 of the 99 members of the House of Representatives. The bill alleges also that the defendants will continue to conduct the elections for members of the General Assembly according to said Act unless they are restrained by the court.

The bill seeks an injunction restraining the defendants from holding any election under said alleged unconstitutional Act either in 1956 or thereafter. In the alternative the bill prays either (a) that a writ of mandamus issue ordering and compelling the defendants, State Board of Election, Democratic and Republican Primary Election Commissions, and the County Election Com-

missioners of Carter, Washington and Davidson Counties to prepare for a general election at large in 1956, wherein every qualified voter of the State would have an equal right to vote for every Representative and every Senator to serve in the 1957 General Assembly or any subsequent General Assembly, or (b) that by decree this Court mathematically reapportion the State of Tennessee and order the defendant Election Commissioners to prepare for and conduct the 1956 election of Representatives and Senators of the State in accordance with the decree mathematically reapportioning the State.

There was an answer and cross-bill filed by the Republican State Primary Election Commission and others seeking virtually the same relief as prayed for in the original bill.

The cross-bill was dismissed on demurrer of some of the defendants and on motion as to others.

The Attorney General filed a demurrer setting out 14 grounds, some of which the court sustained, and some of which were overruled.

The Chancellor correctly denied the relief prayed for under the alternative prayers (a) and (b), *supra.* There is no provision of law for election of our General Assembly by an election at large over the State. The citation of *Smiley v. Holm,* 285 U.S. 355, 52 S.Ct. 397, 76 L.Ed. 795, is not in point, because the case dealt with the election of members of the National House of Representatives which is controlled by Article I, Section 2, under which an election at large is permitted in the absence of a redistricting act.

Quite clearly, also, the Governor has no power to reapportion the State for election of our General Assembly.

The Chancellor entertained the bill, however, for the purpose of rendering a declaratory judgment and thereby overruled the tenth and fourteenth grounds of the Attorney General's demurrer which are respectively that the court will not declare a statute unconstitutional if the result will be to disrupt the orderly process of government, and that the present legislation providing for the apportionment of the Senators and Representatives in the General Assembly is not unconstitutional for any of the reasons stated in the bill.

In his opinion the Chancellor said:

"The Attorney-General has contended in the 10th ground of demurrer that the Court ought not to declare the law in question invalid or unconstitutional because chaos and confusion would result. But how is this so?

"This Court is entitled to presume and will presume that when it has exercised its constitutional duty in this proceeding to declare that there is no authority for the holding of an election for the members of the General Assembly in 1956, that the other two coordinate branches of our government will likewise exercise their duty under the Constitution to provide orderly government for the people within their power to do so; that the Governor, therefore, will exercise his constitutional power and duty to call the Legislature into special session for the purpose of making an enumeration and reapportionment as required by the Constitution; that the Legislature, in turn, its power and duty having been declared herein, will exercise and perform the same by making a proper enumeration and apportionment. That the present General Assembly may thus act as a *de facto* body, the Court

entertains not the slightest doubt. See *State v. Cunningham, supra* [81 Wis. 440, 51 N.W. 724, 15 L.R.A. 561], wherein the Court pointed out that the last legislature selected under the invalid act might lawfully be reassembled to pass a valid act of apportionment. The *de facto* doctrine is well established in Tennessee, particularly in matters involving public policy and necessity. *Beaver v. Hall,* 142 Tenn. 416, 433, 217 S.W. 649.

"That such result will not occur, is inconceivable to this Court.

"For these reasons, the Court is of the opinion that the injunctive relief prayed in the bill to restrain the defendants from holding or conducting an election for members of the General Assembly in 1956, or subsequently, is prematurely sought and will be denied. See *Maryland Theatrical Corp., v. Brennan,* 180 Md. 377, 24 A.2d 911."

■ Thus it is apparent that the Chancellor correctly recognized, as he had already done theretofore in the opinion, that the courts have no power to compel either the legislative or the executive department to perform the duties committed exclusively to their respective domains by the fundamental law. He simply made a declaration that we have no valid reapportionment statute and then fell back on the *de facto* doctrine in order to avoid the otherwise necessary conclusion that by reason of the invalidity of the Act of 1901 we would no longer have any lawfully elected members of the General Assembly.

■ Pretermitting all other questions discussed by the Chancellor and especially the question of whether he had jurisdiction under the declartory judgment statute, we think the Chancellor was in error in applying the *de*

*facto* doctrine. In the first place the case of *Beaver v. Hall,* cited by the Chancellor, in which the *de facto* doctrine is dealt with, the syllabus and the authorities discussed in the opinion show that there can be a *de facto* body or office only until there has been a judicial determination of the invalidity of same.

■ In *Ridout v. State,* 161 Tenn. 248, at page 270, 30 S.W.2d 255, 71 A.L.R. 830, there are set out those instances where the doctrine is not applied. One instance is where either the person or body is not acting in good faith and the public knows of the want of authority there can be no *de facto* doctrine. 43 Am.Jur. 241, Section 495, in which it is said the general rule is that the acts of a *de facto* officer are valid as to third persons and as to the public only until his title to the office is adjudged insufficient, etc. Id., 244, Section 496.

Secondly, *State v. Cunningham,* relied on by the Chancellor, is to be found in 81 Wis. 440, 51 N.W. 724, 15 L.R.A. 561. That case applied the *de facto* doctrine exactly as the Chancellor has applied it here. However, in a much later case, *State ex rel. Martin v. Zimmerman,* 249 Wis. 101, 23 N.W.2d 610, that doctrine was rejected in the following language, at page 612 of the N.W. Reporter:

"The reasons advanced in the argument made by the learned attorney general are inconclusive and if followed to their logical conclusion, would bring the government of the state into a legal *cul-de-sac* because of the elimination for the time being at least, of one of the equal co-ordinate branches of our government. It would destroy our constitutional equilibrium. As suggested, if ch. 27, Special Session, 1931 had become void and legislators elected since 1941 were not chosen

from legal and constitutional legislative districts, then would we have a qualified and lawful body to enact a valid reapportionment statute? It is unnecessary because of the validity of ch. 27, to rely on a theory that legislators elected to office from unconstitutional or non-existent districts, have by some doctrine of *de facto* officialdom based on *de facto* legislative districts, a right to exercise the important duties necessarily entering into a fair and just apportionment. Once it is determined that the present incumbents are not de jure officers, they have no color of authority and could not serve as *de facto* officers. 46 C.J. sec. 367, p. 1054; *Ekern v. McGovern,* 1913, 154 Wis. 157, 142 N.W. 595, 46 L.R.A.,N.S., 796.''

█ It seems obvious and we therefore hold that if the Act of 1901 is to be declared unconstitutional, then the *de facto* doctrine cannot be applied to maintain the present members of the General Assembly in office. If the Chancellor is correct in holding that this statute has expired by the passage of the decade following its enactment then for the same reason all prior apportionment acts have expired by a like lapse of time and are non-existent. Therefore we would not only not have any existing members of the General Assembly but we would have no apportionment act whatever under which a new election could be held for the election of members to the General Assembly.

It seems hardly necessary to comment on the fact that the Constitution limits the number of Representatives to 99 and the number of Senators to 33, to be apportioned by the Legislature according to the number of voters in the various Districts throughout the State.

The ultimate result of holding this Act unconstitutional by reason of the lapse of time would be to deprive us of the present Legislature and the means of electing a new one and ultimately bring about the destruction of the State itself.

Under the allegations of the bill this Act was invalid at the time it was enacted, but the bill fails to allege the existence of a prior valid apportionment act to fall back upon. In that situation the authorities are practically unanimous in holding that a court will not declare such a statute invalid. In *Fesler v. Brayton,* 145 Ind. 71, 44 N.E. 37, 32 L.R.A. 578, the Court said that the effect of striking down an apportionment statute under those circumstances would be to destroy the State Government. See also *State ex. rel. Winnie v. Stoddard,* 25 Nev. 452, 62 P. 237, 51 L.R.A. 229. In *State ex rel. Sullivan v. Schnitger,* 16 Wyo. 479, 95 P. 698, at page 708, a number of cases are cited for the proposition that the court will not declare an apportionment act invalid unless there is a prior valid act on which they may fall back.

We are therefore of the opinion that the Chancellor was in error in overruling the tenth ground of the Attorney General's demurrer. His decree is accordingly reversed, and the bill is dismissed at the cost of complainants.