Charles W. BAKER et al., Plaintiffs,

v.

Joe C. CARR, Secretary of State of Tennessee, et al., Defendants.

Civ. A. No. 2724.

United States District Court
M. D. Tennessee,
Nashville Division.

July 31, 1959.

Denney, Leftwich & Osborn, Nashville, Tenn., Hobart Atkins, Knoxville, Tenn., Chandler, Manire and Chandler, Memphis, Tenn., for plaintiffs.

George McCanless, Atty. Gen. of State of Tenn., Allison B. Humphreys, Sol. Gen., State of Tenn., for defendants.

WILLIAM E. MILLER, District Judge.

It is urgently and ably insisted by defendants that the federal question sought to be made by the complaint is "obviously without merit" and that the Court under the doctrine of Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152, should therefore dismiss the action without taking steps to constitute a court of three judges under 28 U.S.C.A. § 2281.

■ Without undertaking a detailed resumé of the allegations of the complaint, the short of the matter is that under the Constitution of Tennessee the members of the House of Representatives are limited to 99 in number and the members of the Senate to 33, and the legislature is directed at the expiration of each 10-year period after 1871 to make an enumeration of the qualified voters and to apportion the number of members of the legislature among the several counties or districts according to the number of qualified voters therein. Tenn. Constit. Art. 2, Secs. 4, 5 and 6. However, according to the allegations of the complaint (accepted as true for the purposes of the present motion) these mandatory requirements of the State Constitution have been systematically and continuously violated and ignored by the legislature of Tennessee. No reapportionment act has been passed since

the Act of 1901, and even that act, the amended complaint alleges, was enacted without the enumeration of voters required by the Constitution of the State. As a result of changes in population the existing legislative apportionment has become progressively discriminatory in character. The failure and refusal of the legislature to abide by plain and unequivocal provisions of the state Constitution have resulted in a debasement of the voting rights of large numbers of citizens as well as in a gross inequality of representation in the legislative councils of the state.

The plaintiffs, suing on their own behalf and on behalf of others similarly situated, reside in geographical areas which have suffered most from the discrimination. They invoke the Constitution of the United States, particularly the equal protection and due process clauses of the Fourteenth Amendment, contending that the legislature of Tennessee in failing to comply with the state Constitution has subjected them to an invidious discrimination that constitutes a denial of the equal protection of the law and a deprivation of due process of law.

The defendants, at this time at least, do not deny the discrimination, nor do they question the fact that the state legislature has failed and refused to comply with the mandate of the State Constitution. What they do say is that the question involved is exclusively of a political nature and does not present a justiciable controversy, with the result that the Court has no power or jurisdiction to intervene to grant any kind of relief.

The problem of legislative reapportionment has been before the courts on numerous occasions and it would serve no useful purpose to undertake at this time a survey or review of the many decisions on the question. There can be no doubt that generally speaking the courts have been reluctant to enter into an area that might bring them into collision with a coordinate branch of the government. This has resulted in many cases in creating a zone which is "off limits" to judicial authority, leaving a manifest wrong without a judicial remedy. Some courts refuse to intervene upon the ground that the controversy is of a peculiarly political nature, or, as otherwise expressed, is not a justiciable controversy, while the refusal to intervene in other opinions is pitched upon the theory that the courts should exercise their equity discretion to refuse to exercise jurisdiction in a controversy so fraught with political implications.

After a careful review of the allegations of the complaint in the light of the many authorities cited by counsel for the respective parties, the Court has reached the conclusion that the issues presented are of such character that they should be evaluated and considered by a three-judge court as provided by statute and that this Court should not undertake to dismiss the complaint summarily. Notwithstanding some expressions in the cases which would indicate that there is no hope of judicial relief in a case of this type, the Court is not prepared to say that the federal question invoked is so obviously without merit that the complaint should not even be referred to a three-judge court for consideration.

Possibly the leading decision of the Supreme Court of the United States upon the general question is Colegrove v. Green, 328 U.S. 549, 66 S.Ct. 1198, 90 L.Ed. 1432, in which the court sustained the dismissal of an action of qualified voters in certain Illinois Congressional districts to restrain the holding of elections under the provisions of an Illinois law governing such Congressional districts. It may be that the decision in this case closes the door to relief in the present case but the Court is not prepared to say that this conclusion necessarily follows or that it follows so clearly and distinctly that it is not even debatable. In that case seven justices of the Supreme Court heard the appeal. While a majority of four justices held that the action should be dismissed, it is significant that they disagreed as to the reasons for such dismissal, and that three of the justices dissented from the majority and expressed the view that the action

should be sustained. Three of the justices in the majority were of the opinion that the question involved was so political in nature that the courts lacked jurisdiction and that the action should be dismissed for that reason. The other majority justice, while agreeing that the action should be dismissed, was of the opinion that the court had jurisdiction but that in the exercise of its discretion as a court of equity, it should decline to exercise such jurisdiction by intervening in a controversy having so many serious problems and complications. The three dissenting justices were of the opinion not only that the court had jurisdiction but that such jurisdiction should actually be exercised to enjoin the holding of the election under the Illinois Act. It is also worthy of note, as pointed out by Justice Frankfurter in his opinion, that the case could have been disposed of by affirming the dismissal on the authority of the prior decision in Wood v. Broom, 287 U.S. 1, 53 S.Ct. 1, 77 L.Ed. 131, holding that where the Congressional Reapportionment Act did not contain a requirement as to the compactness, contiguity, and equality in population of districts, the state legislature in creating Congressional districts need not observe such requirement.

Whether Colegrove v. Green requires a dismissal of the present action is a question which can be fully considered and determined by a three-judge court. For present purposes it is enough to say that there are differences between that case and the present one that may ultimately prove to be significant. In the first place, Colegrove v. Green involved Congressional districts created by a state legislature under an Act of Congress which contained no requirement that the districts should be set up on ᴧe basis of equality or approximate equality of population. Consequently, in failing to redistrict, the legislature of Illinois did not violate any specific provision of its own Constitution or any specific provision of federal law requiring periodic redistricting upon the basis of equality. Further, in the Colegrove case there was

ample power vested in Congress under the Federal Constitution to redistrict the state if the existing districts set up by state law had become inequitable. In the present case, as pointed out, not only is there a specific constitutional provision requiring periodic reapportionment on the basis of equality but the legislature of the state has refused to act after repeated efforts and demands to obtain relief. The situation is such that if there is no judicial remedy there would appear to be no practical remedy at all.

MacDougall v. Green, 335 U.S. 281, 69 S.Ct. 1, 93 L.Ed. 3, another Supreme Court case cited by defendants as requiring dismissal of the present action, was disposed of by the court in a brief per curiam opinion, but as this Court construes the opinion, the questions here presented were not reached. It is apparent that the court was of the opinion and actually held that the Illinois law attacked in that case did not constitute a denial of the equal protection of the law and did not deprive the plaintiffs of due process of law. It was stated in the opinion that "it is allowable state policy to require that candidates for state-wide office should have support not limited to a concentrated locality". In short, the court held that there was no violation of federal law established, and consequently it was not necessary for the court to decide whether it had power or jurisdiction to grant relief if the violation of federal law had been made to appear. Three justices dissented from the majority, being of the view that the state law constituted a violation of the equal protection clause of the Fourteenth Amendment and that the court should declare the law void. Mr. Justice Rutledge, as in Colegrove v. Green, concurred in dismissing the action but expressed the opinion that a violation of the Fourteenth Amendment was shown, and that the dismissal should be based upon the discretionary right of a court of equity to refuse to entertain jurisdiction.

In South v. Peters, 339 U.S. 276, 70 S.Ct. 641, 94 L.Ed. 834, the court refused to enjoin adherence in the forthcoming

primary to the statute of Georgia prescribing the county unit system. Again in a brief per curiam opinion, the action of the district court [89 F.Supp. 672] in dismissing the action was affirmed, but it is not clear from the opinion whether the refusal to intervene is based upon a lack of jurisdiction or upon the ground that equitable relief should be refused under the particular circumstances of the case. This decision also was by a divided court, two justices believing that the relief should be granted.

A careful reading of the opinion of the Supreme Court of Tennessee in Kidd v. McCanless, 200 Tenn. 273, 292 S.W.2d 40, involving the same laws of Tennessee as the instant case, reveals that the fundamental basis of the decision was the court's opinion that relief could not be granted without completely disrupting, if not destroying, the government of the state. After finding that the de facto doctrine could not be applied and that if the Reapportionment Act was declared unconstitutional the state would be deprived of a legislature, the court held under such circumstances that a declaration of unconstitutionality should be withheld. Thus, the opinion would appear to stand for the proposition that the courts should refuse to intervene in the exercise of a proper discretion in given circumstances, and not for the proposition that jurisdiction does not exist or is completely wanting in such cases. The Supreme Court of the United States simply dismissed the appeal (352 U.S. 920, 77 S.Ct. 223, 1 L.Ed.2d 157) without comment, citing Colegrove v. Green, supra. The fair inference is that the Supreme Court concurred in the finding of the Tennessee Court that equitable relief should be denied in a case where to grant such relief the government of the state would be disrupted or thrown into chaos and confusion.

 From this brief review of some of the more frequently cited decisions of the Supreme Court, it would appear to be at least debatable whether that court has foreclosed the question in all cases of legislative reapportionment. It can certainly be said that generally there has been no unanimity of opinion among the justices of the Supreme Court either as to the result to be reached or as to the grounds for refusing intervention. If the issues are not conclusively settled against the plaintiffs by prior Supreme Court decisions, as to which the Court presently expresses no opinion, the questions of jurisdiction and the propriety of exercising or withholding it, would have to be decided in the light of all relevant factors, including a consideration of the fundamental principle of separation of powers, the desirability of avoiding conflicts with other branches of the government, the delicacy of the relationship existing between the federal and state governments, the possibility of the disruption of the governmental affairs of the state, the nature of the rights claimed by the plaintiffs, the degree and extent to which these rights have been violated, and the ability or inability of the courts to grant effective relief. If it should be assumed that jurisdiction does exist, it would appear that the courts should hesitate to dismiss actions of this character hastily or summarily, especially where a violation of individual constitutional rights is clearly established. Under such circumstances a court of equity should at least be willing from time to time to re-evaluate the problem and to re-explore the possibilities of devising an appropriate and effective remedy—a remedy which would safeguard the integrity of the state government and at the same time protect and enforce the rights of the individual citizen.

Believing that the questions presented should be considered by a court of three judges, the Court has, pursuant to 28 U.S.C.A. § 2284, notified the Chief Judge of the Sixth Circuit of the pendency of the action and the ruling of the Court herein denying the motion to dismiss. This will result in the constitution of a court of three judges under 28 U.S.C.A. § 2281.