Clayton DAWSON, Petitioner-Appellant,

v.

Lynn BOMAR, Warden, Tennessee State Penitentiary, Respondent-Appellee.

No. 15247.

United States Court of Appeals
Sixth Circuit.

Sept. 25, 1963.

Fred P. Graham, Nashville, Tenn., for appellant.

Henry C. Foutch, Asst. Atty. Gen., State of Tennessee, Nashville, Tenn. (George F. McCanless, Atty. Gen., State of Tennessee, Nashville, Tenn., on brief), for appellee.

Before O'SULLIVAN, Circuit Judge, and KENT and WILSON, District Judges.

FRANK W. WILSON, District Judge.

The appellant has petitioned for habeas corpus to obtain relief from a Tennessee State Court conviction and sentence of death for the crime of rape. Petitioner asserts that the failure of the Tennessee Legislature to reapportion itself since 1901 as required by the Constitution of Tennessee [1] violates the equal protection of the laws requirement of the Fourteenth Amendment to the United States Constitution and that the capital punishment laws of Tennessee are void and unconstitutional in that they were both enacted, amended, and recodified and their repeal was prevented by an unconstitutionally apportioned legislature. These alleged grounds for habeas corpus have been duly asserted by the petitioner in the state courts of Tennessee and determined adversely to the petitioner.[2] Subsequently this proceeding was instituted in Federal Court as

provided for in 28 U.S.C. § 2254. The District Court held that the capital punishment laws of Tennessee were valid under the *de facto* doctrine.

The petitioner was convicted of the crime of rape in the Shelby County Criminal Court on April 16, 1960, and the jury fixed the punishment at death by electrocution as provided by statute.[3] This judgment was affirmed by the Supreme Court of Tennessee on October 7, 1960, in an unpublished opinion and the petitioner was committed to the custody of the appellee for the carrying out of the death sentence.

In the petitioner's habeas corpus proceedings before the state courts, the petition was disposed of without reaching the constitutional issues here raised. In those proceedings the Tennessee Supreme Court held that the failure of the legislature to reapportion itself was irrelevant to the validity of the capital punishment laws for rape, as these laws were enacted prior to any alleged malapportionment of the legislature.[4] See also State ex rel. Smith v. Bomar, Tenn., 368 S.W.2d 748 (1963). It is the petitioner's contention in this regard that even though capital punishment for rape pre-dated legislative malapportionment, codification, amendment and re-enact-

1. Tennessee Constitution, Article II, Sections 4, 5, and 6.

2. State, ex rel. Dawson v. Bomar, 209 Tenn. 567, 354 S.W.2d 763; cert. denied by the United States Supreme Court, 370 U.S. 962, 82 S.Ct. 1620, 8 L.Ed. 2d 829.

3. The relevant sections of the Tennessee Code Annotated are as follows:
39-3702. *Punishment for rape.*—Whoever is convicted of the rape of any female shall suffer death by electrocution; provided, the jury before whom the offender is tried and convicted, may, if they think proper, commute the punishment for the offense to imprisonment in the penitentiary for life, or for a period of not less than ten (10) years.
40-3117. *Death by electrocution.*— Whenever any person is sentenced to the punishment of death, the court shall direct that he be put to death by electro-

cution, and that the body be subjected to shock by a sufficient current of electricity until he is dead.

4. The present Constitution of Tennessee was adopted in 1870. The penalty of death for the crime of rape was enacted in 1871 by Chapter 56 of the Public Acts of 1871 and the same is now carried under Section 39-3702 of the Tennessee Code Annotated. No substantive change has been made in the law in this respect since 1871 except that the method of executing the death penalty was changed from hanging to electrocution in 1913 by Chapter 36 of the Public Acts of 1913 (first extraordinary session), which is now carried in the Tennessee Code Annotated as Section 40-3117. These laws have been codified and recodified in 1932, 1950 Code Supplement and 1956. The last reapportionment act material to the issues of this lawsuit was adopted in 1901.

ment of these laws have occurred since legislative malapportionment arose and further that malapportionment has made the legislature unresponsive to majority sentiment for repeal of the capital punishment laws, such sentiment being strongest in those urban and metropolitan areas most discriminated against in legislative representation. Conceding without deciding the petitioner's contentions in this regard, the constitutional issues here raised may be considered.

For the purpose of this opinion it will be assumed that the Tennessee Legislature was malapportioned at all times after 1901 that may be pertinent to this decision and that the malapportionment violates the Fourteenth Amendment to the Constitution of the United States. See Baker v. Carr, 206 F.Supp. 341 (D. C.1962). See also Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663. No issue in this respect is raised in the answer of the respondent. The statutes and acts of a malapportioned legislature are sometimes held valid on the basis of de jure existence.[5] Even if the legislature has no de jure existence, the acts are generally upheld on the basis of the de facto doctrine.[6] This conclusion is reached because the offices created by a state constitution are de jure offices and if the officers filling these legislative positions were elected under an unconstitutional statute, as we have assumed, they would nevertheless be de facto officers,[7] at least until such time as the statute was judicially declared unconstitutional.[8] It is further generally held that irrespective of the de jure or de facto doctrines, the Courts will refrain from declaring legislative acts unconstitutional, even though the legislature may itself have been adjudicated to have been unconstitutionally constituted by reason of malapportionment, where the result would be to create chaos and confusion in gov-

ernment.[9] In such a situation it is generally held that in weighing the consequences of setting aside all legislation and the harm thus caused the public against the harm caused the party complaining of his rights having been violated by the refusal of the legislature to properly apportion itself, the equities favor sustaining the validity of all legislation. The petitioner, while denying the applicability of the de jure or de facto doctrines, concedes that statutes passed by an unconstitutionally apportioned legislature are generally constitutional by reason of this doctrine of balancing of equities and avoidance of chaos and confusion, but contends that capital punishment laws should be considered separate and apart from all other laws because of their drastic and unique nature in that they take away human life, because of the special legal considerations and safeguards provided by the courts with respect to capital punishment laws, and because of the irrevocable and irremedial consequences of their enforcement. It is most capably and vigorously urged upon the Court by counsel for the petitioner that this isolation or separation of capital punishment laws and the striking down of such laws would create no chaos and confusion and is justified upon balancing the equities between society and the petitioner, whose life is at stake. There has been no precedent or authority cited by the petitioner for the proposition of isolating capital punishment laws as an exception to the general rule that acts of an unconstitutionally malapportioned legislature will be upheld, and the Court has not become aware of any authority for that proposition. To that extent, this case is one of first impression.

As indicated by the petitioner's failure to cite authority in support of his contention, the courts have uniformly held

---

5. Bizup v. Tinsley, 316 F.2d 284 (C.C.A.10, 1963) and cases therein cited.

6. See Ftn. 5, supra. See also Ridout v. State of Tennessee, 161 Tenn. 248, 30 S.W.2d 255, 71 A.L.R. 830 (1929).

7. Bizup v. Tinsley, supra.

8. Kidd v. McCanless, 200 Tenn. 273, 292 S.W.2d 40 (1955). See also discussion in 43 Am.Jur., "Public Officers," Sec. 496.

9. Kidd v. McCanless, supra.

that otherwise valid enactments of legislatures will not be set aside as unconstitutional by reason of their passage by a malapportioned legislature. This conclusion is reached upon one or more of three judicially recognized doctrines: (1) the *de jure* doctrine which recognizes that a legislative body created by a state constitution has a *de jure* existence which is not destroyed by any failure to redistrict in accordance with the constitutional mandate; (2) the *de facto* doctrine which recognizes that the legislative offices created by the state constitution were *de jure* and the incumbents, even though elected under an invalid districting act, were at least *de facto* members of the legislature and their acts as valid as the acts of the *de jure* officers; (3) the doctrine of avoidance of chaos and confusion which recognizes the common sense principle that courts, upon balancing the equities between the individual complainant and the public at large, will not declare acts of a malapportioned legislature invalid where to do so would create a state of chaos and confusion. While the doctrine of avoidance of chaos and confusion is an equitable consideration which leads to the application of the *de facto* doctrine in cases of this nature, it has also been held to have independent equitable significance when technically the *de facto* doctrine could not apply.[10] It cannot be conceded, as contended by the petitioner, that both the *de jure* and the *de facto* doctrines would be inapplicable to the facts of this case. Rather, it appears clear that the *de facto* doctrine would apply, as held by the District Court. Moreover, it is conceded by the petitioner that in the interest of avoiding chaos and confusion there is a public necessity for this Court to uphold generally the acts of the malapportioned Tennessee Legislature, but it is the petitioner's contention that the death penalty should be separated from the body of enactments for a weighing of the equities between the public and the petitioner as to those particular statutes. For the Court to select any particular category of laws and separate them from other laws for the purpose of applying either the *de facto* doctrine or the doctrine of avoidance of chaos and confusion would in fact circumvent legal principles in order to substitute the Court's opinion as to the wisdom, morality, or appropriateness of such laws. The personal views of members of the court with regard to capital punishment should not be grounds for withdrawing such laws from the operation of established principles of law. The purpose of both the *de facto* doctrine and the doctrine of avoidance of chaos and confusion would be defeated if the judiciary could be called upon to adjudicate respective equities between the public and the complaining party as to any specific act. Both doctrines must have overall application validating the otherwise valid acts of a malapportioned legislature, with a judicial severance of specific acts and a weighing of equities as to those specific acts precluded, if a government of laws and not of men is to remain the polar star of judicial action.

The Court is of the opinion that both the *de facto* doctrine and the doctrine of the avoidance of chaos and confusion would have application in this case and would satisfy the petitioner's objection under the Fourteenth Amendment to the validity of the capital punishment laws here involved, with the result that no federal question would arise under the equal protection clause.[11]

Affirmed.

10. Kidd v. McCanless, supra.

11. LaRose v. Tahash, 371 U.S. 114, 83 S. Ct. 172, 9 L.Ed.2d 168 (1962).