STATE OF TENNESSEE ex rel.
KERNS HUGH FRALIX

*v.*

LYNN BOMAR, WARDEN, etc.

381 S.W.2d 297.

(*Nashville* December Term, 1963.)

Opinion filed July 15, 1964.

KERNS HUGH FRALIX, pro se.

HENRY C. FOUTCH, Assisant Attorney General, DOUGLAS M. FISHER, Special Attorney, for the State.

MR. CHIEF JUSTICE BURNETT delivered the opinion of the Court.

The petitioner, Kerns Hugh Fralix, was convicted of attempting to commit a felony in 1961. He was sentenced to serve from one (1) to five (5) years in the State penitentiary. A short time later, while on probation, he became drunk and disorderly, suffered a revocation of probation and was again confined in the State penitentiary in Nashville.

This case is before us, on an appeal by petitioner, Fralix, from the Davidson County Criminal Court where his petition for a writ of *habeas corpus* was denied.

Simply stated, the petitioner's assignment of error is that he was denied equal protection of the law under the Fourteenth Amendment since the State laws under which he was sentenced were passed by a Legislature which was malapportioned due to its failure to reapportion itself according to the Tennessee Constitution.

This problem of the legality of acts passed by a malapportioned Legislature was approached in Oklahoma in 1956 in *State ex rel. Tayrien v. Doggett* (Okl.Cir.) 296 P.2d 185.

This petitioner sought to stop his prosecution on a drunk driving charge because the Legislature which

passed the act under which he was charged was malapportioned.

The court there said that, malapportionment notwithstanding, the acts of the Legislature were those of a *de facto* body, and, as such, valid.

Further it was pointed out that should the contention of the petitioner be sustained a state of chaos and confusion would result. This would have the ultimate effect of destroying all legislative enactments and eventually the State government.

We have presented in this case, then, two of the rules used to justify the sustaining of acts done by malapportioned Legislatures namely; the *de facto* officer rule, and the chaos and confusion rule.

The third most used rule is called the *de jure* officer rule. It was applied by the Supreme Court of Kansas in *State v. Latham,* 190 Kan. 411, 375 P.2d 788, wherein it was held:

"Assuming the legislature has failed to effect a new apportionment of the districts of its members as required by Art. 10, Sec. 2 (Kansas Constitution), nonetheless the acts of such legislative body would be those of a *de jure* legislature and the members thereof are *de jure* officers."

Some of the first stirrings of controversy over the problem of legislative apportionment was felt by this Court in *Kidd v. McCanless,* 200 Tenn. 273, 292 S.W.2d 40.

In this case we held that there can be a *de facto* body or office only until there has been a judicial determina-

tion of the invalidity of that office or body. Thus, when applied to the Legislature, we adjudged that body *de facto* and refused to declare the reapportionment act of 1901, then in question, invalid because to do so would have terminated the *de facto* existence of the Legislature thereby destroying our State government.

Again this question was before us in *State ex rel. Dawson v. Bomar*, 209 Tenn. 567, 354 S.W.2d 763, wherein the petitioner sought a writ of *habeas corpus* alleging that the act providing the death penalty for rape, under which he was convicted, was unconstitutional because it was passed by a malapportioned Legislature.

We held that the death penalty had been in effect for rape since 1871 hence the failure of the Legislature to reapportion itself since 1901 had no bearing on the matter.

In both the case of *Kidd v. McCanless,* supra, and *State ex rel. Dawson v. Bomar,* supra, we laid the groundwork for a square confrontation with and decision on the precise effect of legislative malapportionment on criminal statutes passed by our Legislature. That confrontation is now at hand.

We are in accord with the decision rendered by the United States Court of Appeals for the Sixth Circuit in *Dawson v. Bomar*, 322 F.2d 445.

The petitioner, Dawson, after having his petition for *habeas corpus* denied by us in *State ex rel. Dawson v. Bomar,* supra, petitioned the Federal District Court, Middle District of Tennessee, for a writ of *habeas corpus.* Upon its denial he appealed.

520

In the decision of the court, Judge Frank Wilson enumerates the three rules used to validate a malapportioned Legislature's acts and applied the *de facto* officer and chaos and confusion rules to the Tennessee Legislature.

■ Therefore, because the acts of the Legislature of Tennessee since 1901 have been those of at least a *de facto* body its acts are as valid as those of a *de jure* body so far as the State of Tennessee is concerned.

■ Further, since to hold the acts of our Legislature since 1901 invalid because of malapportionment would cause a state of chaos and confusion to exist, we will balance the equities between the individual complaint in this case and the public at large and refuse to hold the acts of our malapportioned Legislature invalid, because to do so would destroy our State government.

Accordingly the appeal of the petitioner is dismissed and the judgment of the lower court is affirmed.