Gerald P. Culkin, J.
This is a motion brought by Anthony J. Travia and Joseph Zaretzki, New York State Assembly Speaker and President pro tern of the State Senate, respectively, for leave to intervene as parties petitioner herein. They assert intervening claims on their own behalves, as members of the Legislature, citizens and taxpayers and on behalf of all citizens and taxpayers of New York. Assuming permission to intervene will be granted, these applicants further move for an order, pursuant to article 43 of the CPLR, appointing three Referees, “ for the purpose of formulating a comprehensive plan to reapportion the Senate and Assembly of this State, without regard to political considerations, and in a manner which complies with the Fourteenth Amendment of the United States Constitution and with all applicable provisions of the New York State Constitution not in conflict with the United States Constitution ’ ’. Petitioners also seek an order decreeing that the November, 1966 election of members of the Legislature is to proceed upon the basis of such plan, unless the Legislature enacts an acceptable reapportionment plan of its own on or before February 1,1966.
A brief review of recent history is necessary to put the instant proceeding in proper perspective. Following a determination by the Supreme Court of the United States that the apportionment under which our present Legislature was elected is invalid under the equal protection clause of the Fourteenth Amendment of the Federal Constitution (WMCA v. Lomenzo, *495 377 U. S. 633), the matter was remanded to a three-Judge District Court for further proceedings. On July 27, 1964, that court issued an order providing (1) that the 1964 legislative elections could proceed under the invalidated apportionment system but that the legislators would be permitted to serve only a one-year term, instead of the two-year term provided in our State Constitution, (2) that a special 1965 election must be held under a constitutionally valid apportionment plan to be enacted by the New York Legislature and submitted to the District Court for approval not later than April 1, 1965, the legislators so elected again to serve for only one year and (3) the regularly scheduled November, 1966 election for a normal two-year term would be held under the same or some other court-approved reapportionment plan. On appeal the United States Supreme Court summarily affirmed this order (sub nom. Hughes v. WMCA, 379 U. S. 694). A special session of the Legislature was convened late in 1964, wherein a series of Reapportionment Compliance Acts were enacted, and, in due course, these were submitted to the three-Judge District Court for approval. That court rejected three of the plans submitted but declared that Plan A (L. 1964, ch. 976) complied with the provisions of the Federal Constitution and the order of July 27, 1964 (238 F. Supp. 916). The District Court did not concern itself with objections to Plan A based upon claimed violations of the State Constitution, but indicated that such questions were properly to be decided by our State courts. This was in conformity with the views expressed by the United States Supreme Court in a number of recent reapportionment cases, to the effect that determination of questions of State constitutionality should be left to the State courts and that the greatest possible deference to State action should be shown by the Federal courts (see, e.g., Reynolds v. Sims, 377 U. S. 533 and related cases decided the same date, June 15, 1964; see, also, Scott v. Germano, 381 U. S. 407, June 1, 1965).
In January, 1965, petitioner Orans commenced the captioned special proceeding which resulted in a Special Term judgment declaring that the Federally approved Plan A (the Reapportionment Compliance Act of 1964), which provided for an Assembly consisting of 165 members, violated a State constitutional provision calling for an Assembly of 150 members. The act was also held void as to State Senate reapportionment in view of the State constitutional provision that reapportionment and redistricting of both Senate and Assembly must be by the same law (45 Misc 2d 616, Matthew M. Levy, J.). (Meanwhile, the three-Judge District Court extended the State’s *496 deadline for submitting an acceptable reapportionment plan from April 1,1965, to May 5, 1965.) On April 14, 1965, the Court of Appeals affirmed this court’s judgment as to the unconstitutionality of the 1964 Reapportionment Compliance Act (15 N Y 2d 339). The present Legislature then made a belated attempt to devise a reapportionment plan within the 150-member limitation, but the plans, as of the May deadline, were incomplete and wholly inadequate. Ignoring the Court of Appeals holding in this case, that Plan A violated the New York State Constitution, a majority of the three-Judge District Court, on May 18, 1965, ordered the November, 1965 legislative election to proceed under Plan A. The United States Supreme Court refused to grant a stay of the May 18 order and refused to accelerate an appeal (sub mom. Travia v. Lomenzo, 381 U. S. 431). Thereafter, a new State court action was commenced in Supreme Court, Albany County, by State Senator Glinski, to enjoin all State officials from conducting the 1965 November election under the invalidated Plan A. On July 9, 1965, the Court of Appeals rendered a decision in this new action enjoining the holding of the 1965 election (Glinski v. Lomenzo, 16 N Y 2d 27). This action was based upon a finding by a majority of the court that no “final and binding” order requiring the election had yet been issued by the three-Judge District Court in WMGA v. Lomenzo, and the court’s obligation to prevent the holding of an election which violates our State Constitution (see Moore v. Walsh, 286 N. Y. 552). The Court of Appeals proved to be mistaken as to the intent of the District Court. On July 13, 1965, said District Court enjoined all persons from interfering in, any way with the holding of the November 1965 election under Plan A. The United States Supreme Court (Mr. Justice Harlan acting) has refused to stay this order pending appeal • consequently, the 1965 legislative election shall have been held before this matter is again considered by the United States Supreme Court.
Immediately upon denial of said stay, the instant applications were brought herein. Since Assembly Speaker Travia was a necessary party respondent in the original review proceedings commenced herein (L. 1911, ch. 773), his right to intervene must be deemed absolute (CPLR 1012, subd. [a], par. 1). However, such intervention must be as a party respondent and shall take the form of a substitution of parties as between respondent Borkowski and intervenor Travia. Of course, the fact that intervenor Travia is a respondent does not prevent him from joining intervenor Zaretzki in seeking affirmative relief herein.
*497 The application of Senator Zaretzki to intervene as a party petitioner is granted. Such intervention appears proper under CPLR 1012 (subd. [a], par. 2) and shall be allowed, in any event, under CPLR 1013. Petitioner Orans opposes the intervention of petitioner Zaretzki on the ground that the Senator’s interests and the interests of those he purports to represent in this proceeding are being adequately represented by the present petitioners. His attorney notes with pride that petitioners have been the successful parties thus far. However, the foregoing recitation of recent events demonstrates that petitioners’ victory thus far is a Pyrrhic one. Notwithstanding a declaration of the invalidity of Plan A (15 N Y 2d 339), we face the possibility of having the Federal courts impose such reapportionment plan permanently upon our State. For reasons discussed below, it is necessary for this court to act now in this matter. Consequently, the interests of all the citizens and taxpayers of New York State are being inadequately represented by present petitioners to the extent that said petitioners oppose a request for affirmative relief at this time when such a request appears to be in the best interest of our citizens. Indeed, in the course of argument, petitioner Orans has come to concede the need for eventual intervention of this court in the manner requested by the movants, and now asks that denial of the requested reference be without prejudice to a renewal at some later time. The remaining petitioners, through their spokesman, Edward I. Koch, concede the right of both applicants to intervene herein, approve of the request for the appointment of Beferees, but oppose the nomination of any present legislator or one chosen by such legislator on the grounds of likely partisanship and they ask this court to select prominent nonpartisan citizens for the task of reapportionment.
Respondents oppose the intervention and the further requested relief on a number of unacceptable grounds. Bespondents contend that there is nothing left of this proceeding, originated pursuant to section 5 of article III of the Constitution of the State of New York and chapter 773 of the Laws of 1911, in which the movants may intervene. They contend that the original proceeding ended in a final judgment (45 Misc 2d 616) affirmed by the Court of Appeals (15 N Y 2d 339) and that this “ exhausted ” the court’s power to proceed pursuant to the special statutory review provision. If the court’s general equity power is being invoked, argue respondents, then let the intervenors do it by appropriate plenary proceedings, rather than by attempting to revive the instant cause. In so arguing respond *498 ents misread and misunderstand the purpose of the special statutory provisions for reapportionment review. Respondents would make it a meaningless procedure whereby the courts make abstract declarations of constitutionality without any regard to the practical consequences of such declarations. In the present situation, the intervention of the three-judge District Court has prevented enforcement of injunctive relief granted as a natural consequence of the declaration of unconstitutionality. Should our Legislature fail to enact a new valid apportionment statute, there is every likelihood that this unconstitutional Plan A will be given further, possibly permanent, effect by the Federal courts. Chapter 773 of the Laws of 1911 empowers this court, in apportionment review proceedings, to grant such “ other relief as is proper ”, that is, such relief as is necessary to effectuate the court’s primary determination. In order to give effect to the prior determination herein, it is necessary that this court fashion some immediate and continuing relief, and the instant applications are appropriate means of securing such relief.
Moreover, the order of this court dated March 24, 1965 (Matthew M. Levy, J.) expressly recites that this court retains jurisdiction of the captioned proceedings, “ for the purpose of * * * conducting such further proceedings as any party may request or as may be appropriate in the light of further proceedings in these proceedings or in WMCA Inc. v. Lomenzo, including (but without limitation) applications for injunctive or other relief as may be appropriate to give effect to this judgment or as justice may require.” The instant applications fall squarely within this reservation of jurisdiction.
Respondents next argue that even if this proceeding is properly before the court, the requested relief should be denied, first, because the same relief was sought in Glinski v. Lomenzo (16 N Y 2d 27, supra) and found to be inappropriate and second, because both our State Constitution and our Court of Appeals require that reapportionment be left to the Legislature.
It would appear unwise to attempt to rely in any way upon Glinski v. Lomenzo (supra). The Court of Appeals enjoined the holding of the 1965 election, and three Judges opinioned that until the Legislature had an opportunity to formulate a valid plan the present legislators would continue to sit under a system of weighted voting. It is with this relief in mind that we must view the court’s affirmance of the dismissal of one cause of action calling for the appointment of a Special Master to promulgate a new apportionment plan for 1966. The thrceJudge District Court has now frustrated that decision by order *499 ing the November, 1965 election to be held pursuant to Plan A. We cannot know how the court might have treated the request for a Special Master if squarely faced with Federal judicial intervention, and this court will not join respondents in speculating.
The present intervenors seek a reference pursuant to article 43 of the CPLR. That article would seem to be inapposite since it concerns itself only with the powers to be given, and procedures to be followed by Referees. It is CPLR 4001 which invests the court with whatever power it possesses to appoint Referees in the ordinary course of events.
It may well be that no precedent exists for the appointment of a Special Referee, or panel of Referees, or jury of experts, or advisory commission, for the purposes herein intended. However, we have been presented with an extraordinary situation, a constitutional crisis, which requires extraordinary actions if the sovereignty of this State is to be preserved. “If we can find no precedent we must establish one. The court should be resourceful in fashioning a remedy commensurate with a complex situation.” (White v. Anderson, 394 P. 2d 333, 338 [Col.].) [It is worthy of mention that respondents raised no objection to the proposed use of a Referee or Special Master by the District Court and, indeed, argue here that the likelihood of such appointment should deter this court from acting.]
Respondents are correct in stating that the judiciary of this State has traditionally maintained a ! ‘ hands off ’ ’ attitude with regard to reapportionment. Our courts have held that even where the Legislature fails to act, it is not the province of our courts to undertake this essentially political function (see Burns v. Flynn, 155 Misc. 742, affd. 245 App. Div. 799, affd. 268 N. Y. 601 [1935]). In the affirmance of the original proceeding herein (Matter of Orans, 15 N Y 2d 339), the Court of Appeals again affirmed the proposition that redistricting and reapportionment are matters for the Legislature. I agree that the primary responsibility remains with the Legislature. I reject the suggestion of petitioners that the members of our Legislature are so immersed in partisan political considerations as to be morally and intellectually incapable of fulfilling the oath to support and defend loth the Federal Constitution and the Constitution of the State of New York. I reject the prejudgment of our present legislative leaders, intervenors herein, that neither the present Legislature in Special Session nor the 1966 Legislature in .Regular Session is likely to formulate any acceptable reapportionment plan although squarely faced with the duty of doing so. I also reject the suggestion of respondents that we just *500 give up and throw ourselves on the mercy and wisdom of the Federal District Court. I am of the view that reapportionment is a function which can be best accomplished by the Legislature. The composition of the Legislature, the knowledge which its members from every part of the State bring to its deliberations, its techniques for gathering information, including existing committees on reapportionment, the expertise its members have so recently acquired in the task of redistricting, and other factors inherent in the legislative process make it the most appropriate body for reapportionment (accord: Butcher v. Bloom, 415 Pa. 438 [1964]). Consequently, whatever steps are taken by the court, our Legislature must and shall be given a further opportunity to enact a constitutionally valid reapportionment plan (see, e.g., Maryland Committee v. Tawes, 377 U. S. 656, 676; Davis v. Mann, 377 U. S. 678, 692-693).
However,, having affirmed my faith in the ability of our Legislature to perform its constitutional duty, I cannot close my eyes to the possibility that our Legislature may, nevertheless, fail to seasonably act. The consequences of legislative inaction are unmistakeably clear — judicial intervention and, if necessary, judicial assumption of the legislative task of reapportionment (see, e.g., Reynolds v. Sims, 377 U. S. 533, supra). We may lament with Mr. Justice Harlan that “It is difficult to imagine a more intolerable and inappropriate interference by the judiciary with the independent legislatures of the States ’ ’ (dissenting, in Reynolds v. Sims, supra, p. 615), but we must face the reality of such interference and its consequences. The District Court in WMCA v. Lomenzo had heretofore acted with commendable restraint. Nevertheless, that court has now decreed that temporary violence must be done to our State Constitution rather than permit our citizens to endure a malapportioned Legislature beyond December 31, 1965. Moreover, when faced with the failure of the Legislature to formulate an apportionment plan which conformed to both Federal and State constitutional requirements, by the May 5, 1965 deadline, the Federal court unhesitatingly ordered the coming election pursuant to a plan which does further violence to our State Constitution. There is little reason to expect that our State Constitution will fare any better in respect of the November, 1966 election should State inaction force the Federal District Court to further intervene. This is so not because of any antipathy towards our State government or its Constitution on the part of the Federal court (save where our Constitution conflicts with the United States Constitution) but rather because determination of State constitutional standards is generally not a concern of the District *501 Court but is left to the State courts. Illustratively, discrimination in districting based purely on political considerations (i.e., gerrymandering) is violative of our State Constitution. Such discrimination has not yet been held to be within the ambit of the equal protection clause of the Fourteenth Amendment. Consequently, it would appear that a Federal District Court imposing a reapportionment plan upon a State need not consider the question of gerrymander. Indeed, if it be so advised, the Federal court need only give consideration to the mandate that both houses of the Legislature shall be apportioned on the basis of population, and disregard all else. It appeared uncertain from the initial line of reapportionment cases decided on June 15, 1964 (see, e.g., Reynolds v. Sims, 377 U. S. 533, supra), whether the Supreme Court had delegated the task of supervising State reapportionment exclusively to the local District Courts or whether State courts were also empowered to control reapportionment. Respondents have proceeded in this action and in WMCA v. Lomenzo as if they believed that the Federal court had exclusive power over reapportionment. Even the Court of Appeals in its prior opinion herein (15 N Y 2d 339) appears to suggest that the judiciary defers to the Legislature on questions of reapportionment not merely because that body is best equipped for the task, but because the traditional notion that the judiciary lacks the power to supervise reapportionment still prevails. However, all uncertainty as to the State court’s power to act has now been dispelled: 1 ‘ The power of the judiciary of a State to require valid reapportionment or to formulate a valid redistricting plan has not only been recognized by this Court but appropriate action by the States in such eases has been specifically encouraged. Maryland Committee v. Tawes, 377 U. S. 656 (1964); Scranton v. Drew, 379 U. S. 40 (1963), citing Butcher v. Bloom, 415 Pa. 438, 203 A. 2d 556 (1964); Jackson v. Bodine, 43 N. J. 453, 205 A. 2d 713, 724 (1964). See also Kidd v. McCanless, 200 Tenn. 273, 292 S. W. 2d 40 (1956), and discussion thereof in Baker v. Carr, 369 U. S. 186, 235-236 (1962).” (Scott v. Germano, 381 U. S. 407, 409.)
In Scott v. Germano, the United States Supreme Court compelled the three-Judge District Court to “ stay its hand ” since the State court (Illinois) has now stepped into the picture and has assumed supervision of the problem. It is interesting that Mr. Justice Hablax, in denying a stay from the most recent order in WMCA v. Lomenzo, emphasized the court’s preference for State court action. He stated that the Supreme Court “ has repeatedly encouraged the state courts to fashion appropriate *502 relief in reapportionment cases, even after a federal court has itself entered an order
This last-stated preference for State court action ‘‘ even after a federal court has itself entered an order”, is this court’s answer to respondents’ final argument (indorsed by the minority in Glinski v. Lomenzo, 16 N Y 2d 27, supra) that this court should defer to the District Court because it first obtained jurisdiction over the dispute. Whatever apportionment plan is adopted for the November, 1966 election must eventually be submitted to the three-Judge District Court to determine the plan’s conformity to Federal constitutional standards. However, the question remains, shall the State court enter the picture, commence supervision of reapportionment and thus incline the Federal court to stay its hand until the sole issue remaining is the Federal question of compliance with the one-man, one-vote mandate 1
Indeed, the basic question presented to this court is not whether there shall be judicial intervention in the event of legislative inaction or impotence. Judicial intervention is a foregone conclusion in that unfortunate event. The question to be decided is whether immediate and direct supervision shall be assumed by the State courts or whether the Federal court shall be obliged to again fill the void created by State inaction. Our Court of Appeals has already dictated the choice. “ To turn the whole thing over to the Federal courts would be an abdication of the State’s sovereignty.” (Matter of Orans, 15 N Y 2d 339, 352, supra.)
Having expressed the view that the court shall find the power to appoint a panel of experts, or Referees, if that be necessary, and the further view that the present and upcoming Legislature must be given another opportunity to formulate a valid plan before this court will take the drastic step of formulating its own plan of reapportionment, it logically follows that I am disposed to defer decision on the employment of a panel of Referees, and consequently the selection of individual members of said panel at this time. It has been called to the court’s attention that subsequent to oral argument on these applications, the G-overnor signed into law chapter 1070 of the Laws of 1965 providing for a June primary in 1966. The primary election is scheduled to be held on June 21, 1966. As a consequence, the deadline for filing a statement of party positions to be filled at such election (Election Law, § 18) is March 8, 1966. The first day to circulate designating petitions will be April 5, 1966 (Election Law, § 136, subd. 5). This is also the first day to circulate nominating petitions for delegates to the State Con *503 stitutional Convention to be convened in 1967 (L. 1965, ch. 371). The court is also mindful of the fact that any reapportionment plan it passes upon must thereafter be submitted to the three-judge District Court for approval prior to its implementation.
Considering all of these factors the court determines that it must at this time assume a supervisory role in reapportionment. However reluctantly, this court must impose deadlines upon the Legislature, and in the event of legislative inaction, this court must be prepared to insure that the November, 1966 election and the subsequent Constitutional Convention are had pursuant to a redistricting and reapportionment plan which is in conformity with the New York State Constitution as well as the Federal Constitution. Therefore, the Intervenors ’ motion is granted as follows: The court decrees that the regularly scheduled November, 1966 election for a normal two-year term shall be held under a plan to reapportion the Senate and Assembly of this State, which complies with the Fourteenth Amendment of the United States Constitution and with all applicable provisions of the New York State Constitution not in conflict with the United States Constitution. Respondents shall submit such plan for this court’s approval on or before February 1, 1966. Upon the failure of respondents to submit such a plan, this court shall undertake the formulation of a reapportionment plan which shall, with Federal District Court approval, govern the November, 1966 election of members of the New York Legislature. The finally approved plan shall also form the basis for any primary contests to nominate candidates for the Legislature, for the nomination of delegates to the Constitutional Convention and for any special election to fill vacancies prior to December 31,1968. The court may upon its own motion, at any time, appoint an appropriate number of - Referees, or jury of experts to assist in the formulation of a comprehensive re apportionment plan as aforesaid, should the court determine that the Legislature and- the respondents herein are not proceeding with reasonable diligence so as to permit' completion of a valid plan by February 1, 1966. The court also reserves decision as to whether or not it shall, in all events, appoint such Referees or experts to assist the court in determining whether such plan or plans as are submitted by respondents are in conformity with constitutional requirements.