STATE of Missouri, Respondent,

v.

Bruce Lee BAZELLA, Appellant.

No. KCD 26900.

Missouri Court of Appeals, Kansas City District.

March 31, 1975.

Willard B. Bunch, Public Defender, Sixteenth Judicial Circuit, Gerald M. Handley,

Asst. Public Defender, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Before SOMERVILLE, P. J., PRITCHARD, C. J., and TURNAGE, J.

PRITCHARD, Chief Judge.

Appellant was tried to the court, a jury being waived, for the commission of the crime of possession of a restricted drug, pentobarbital. Upon a finding of guilt, appellant was sentenced to six months imprisonment in the Jackson County jail, with credit being given for 33 days as time previously served in jail.

The first issue is whether the court erred in failing to sustain appellant's motion to suppress the evidence seized by the arresting officer. The claim of error is argued that Officer DeMent, who seized the evidence, and another officer, were unlawfully (as trespassers) in the Berkley Hotel, on the second floor thereof, without warrant for arrest or search, and without specific request from the hotel management that they be present at the hotel on the evening in question.

The testimony of the pre-trial motion to suppress the seized evidence was stipulated to be considered by the court at trial. Appellant, on January 27, 1973, was visiting friends in Apartment 207 in the Berkley Hotel at 315 West 38th Street, Kansas City, Missouri. After he had been there about six hours he was arrested in the hallway on the second floor. On the same date, at night, Officer DeMent with his partner, Jerry Johnson, were on patrol duty as a part of the tactical unit, and entered the Berkley Hotel for the purpose of a residence check. The Berkley was a transient hotel, with three or more floors. DeMent had no warrant to search the hotel, or to arrest appellant. DeMent had been to the hotel before on narcotics incidents, the night manager having upon occasion asked him to check by every once in awhile "due to problems with what he stated were 'pot parties' that occur quite frequently in the hotel, and he asked that any time I was in the neighborhood to stop by and see if everything was okay." DeMent and his partner entered the building and walked up the stairway. As DeMent was turning a corner on the 2nd floor appellant yelled out " 'It's the cops,' " and started running down the hall. DeMent "chased him down the hall and around a corner and he was putting a vial with some kind of a substance in it on top of an air conditioning unit, and—." DeMent pulled appellant's hand back and reached up to grab the vial, and as he pulled the vial back down there was a syringe lying next to it which fell off and stuck in DeMent's hand. At that time, in the hallway, appellant was placed under arrest for possession of narcotics.

On further direct examination, DeMent acknowledged that on January 27, 1973, the hotel manager did not ask him to go there, and he went there infrequently—once a month or four or five times a month. He talked with employees at the desk on various occasions.

Vicki Walberg, appellant's friend whom he was visiting at the Berkley, testified at trial that as one enters the hotel there is a desk. The front door of the hotel was not locked, and "A Well, they have a 'no trespassing' sign on the stairway and you are supposed to check in at the desk before you do go up."

Mr. Steele, the manager of Berkley, testified at trial that he had never given permission to any police officer to enter the hotel and proceed to go through it for the purpose of checking for any particular narcotics, nor did his wife or any hotel clerk. It was possible that persons who worked various night shifts could have had contact with the police and discussions with them. DeMent could not remember

the person who asked him, on previous occasions, to check the hotel, but Mr. Steele did not do so. It was developed on rebuttal testimony of DeMent: "A As I stated earlier, I had been in the Berkley Hotel on several occasions, and I had talked to the fellow I described earlier on several occasions, and he stated to me that he was glad that I came around every once in a while due to the problems that they had in the hotel. I was given no permission, as such, to come to the building, or asked or requested."

Appellant in his urging that the officers here were unlawfully on the premises and thus were trespassers first relies upon McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948). There, McDonald had been under police observation for several months prior to the arrest. He had rented a room in a residence. Without an arrest warrant or a search warrant, the officers surrounded the house, and one of them thought he heard an adding machine. Believing that a numbers game was in process, the officers sought admission to the house. One of them opened a window in the landlady's room and climbed through. After the ground floor of the house was searched, one officer stood on a chair on the second floor hallway and looked into the transom into petitioners' room, and saw both petitioners, numerous slips, money piled on a table, and adding machines. It was held that the felonious character of the initial entry into the house made the arrest and seizure invalid, and the court said [concurring opinion of Mr. Justice Jackson], 335 U.S. 458, 69 S.Ct. 194, "But it seems to me that each tenant of a building, while he has no right to exclude from the common hallways those who enter lawfully, does have a personal and constitutionally protected interest in the integrity and security of the entire building against unlawful breaking and entry." Next relied upon is Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L. Ed. 436 (1948), the facts of which were that after narcotics officers recognized a strong odor of opium burning in a hotel room they demanded entry, and defendant opened the door of the room, which resulted in her arrest and the seizure of certain items of evidence. It was held that the arrest, search and seizure were invalid, the court saying that the entry into defendant's living quarters was demanded under color of office, granted in submission to authority. These cases are not factually similar to the situation at the Berkley Hotel.

As is quite apparent from Officer DeMent's testimony that he had the custom of visiting the Berkley from one to five times a month, and that this was done with the approval, acquiescence, or tacit permission, of persons in charge, he and his partner were not even technical trespassers on the premises. The evidence is further that the hotel owner stopped DeMent and said he had seen him around before. (There is no evidence that the owner objected to DeMent's presence.) It cannot be said under the facts of the officers' custom to check the hotel premises that there existed unlawful trespass. The trespass statute of this state, § 560.447, RSMo 1969, V.A.M.S., (Laws 1973, p. ——, H.B.No.128, § 1), provides that "No person shall willfully enter or remain upon or in any land, structure, vehicle, aircraft, or watercraft with knowledge that he is not authorized or privileged to enter or remain upon or in such land, structure, * * * if: (1) He enters upon or in the land, structure, * * * after such entry upon or in has been forbidden by a personal communication of the owner or person authorized by the owner to make such communication, or he remains upon or in the land, structure, * * * after he has been ordered to leave by the owner or person authorized by the owner to so order; or (2) The land, structure * * * is posted in a reasonable manner which would ordinarily come to the attention of intruders; or (3) The premises or property is located within a city, town or village, and is used for residential purposes. * * *." It is certainly not shown that the officers were with any

knowledge that they were not authorized or privileged to enter the premises. Contrarily, the legitimate inference is that they were welcomed by those ostensibly in charge of the Berkley to make their checks. No one had forbidden them to enter, and no one ordered them to leave.

It is not shown here that the no trespassing sign was erected exclusively to protect tenants' interests in the common hallways of the Berkley, where this arrest and seizure of the restricted drug occurred. It is not shown that tenants had the right to exclude intruders from the hallways so as to make them adjuncts of ownership to rooms in the hotel. United States v. Young, 322 F.2d 443 (CA 4th, 1963), is in point. There from the vantage of adjoining woods agents watched defendants unload various items used in the illicit whisky business into a barn. The door of the barn was opened "fortuitously", by those inside before the agents knocked. The court said, 322 F.2d 445[5, 6], "In the absence of any testimony whatever that the woodlands were owned by O'Neal [co-defendant], there is no basis for a finding that the agents committed even a technical trespass as they observed the defendants' activities from their concealed position in the woodlands. If their observation of the large quantity of whisky stored in the barn be regarded as a search, it was plainly incident to, and contemporaneous with, the valid arrests which they effected when Young threw open the door of the barn."

Contending that there were material conflicts in the testimony of DeMent as to whether he had permission to go to the second floor of the hotel, and further conflicts between his testimony and appellant's friend, Miss Vicki Walberg, appellant says the evidence failed to establish his guilt beyond a reasonable doubt. The record shows that there were not material conflicts in DeMent's testimony. What has been said above, set forth in the light most favorable to the state, supports the conviction. Any conflicts in the testimony were for the trial court to resolve. Clearly the state made a submissible case.

The judgment is affirmed.

All concur.